**Carlo Kelly GIACONA, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16986.**

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

Rehearing Denied Aug. 11, 1958.

Certiorari Denied Oct. 27, 1958.

**452**

William H. Scott, Houston, Tex., for appellant.

Newton B. Schwartz, Asst. U. S. Atty., Malcolm R. Wilkey, William B. Butler U. S. Attys., Houston, Tex., for appellee.

Before RIVES, CAMERON and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Appellant was tried on a six count indictment, three counts of which charged him with acquiring or obtaining various amounts of marihuana without having paid the transfer tax imposed by the Internal Revenue Code,[1] and three companion counts with transporting or concealing, or facilitating the transportation or concealment of, the marihuana, in violation of subdivisions (1) and (2), respectively, of I.R.C.1954, 26 U.S.C.A. § 4744. The jury returned a verdict of guilty on the first two counts in each of which the amount involved was 28 ounces of marihuana. A verdict of not guilty was returned on the remaining four counts.

Mr. Finley, an enforcement agent for the Federal Bureau of Narcotics, had received information[2] that there was marihuana contained in tobacco cans and a sack concealed on the foundation blocks which supported the sills underneath a building in which the defendant operated a business known as Mecca Drive-In Grocery in Houston, Texas. On March 26, 1957 at about 11:45 P.M., Finley and other officers set up a surveillance of said premises from an adjacent property. During the first three hours nothing happened.

At about 2:45 or 3:00 A.M., Officer Finley went on the premises, crawled up to the building, reached underneath it and took from the top of one of the foundation blocks a round paper bag. Finley took the bag back to his fellow officers in waiting, where a sample of its contents was extracted. Each of the officers initialed the bag, after which Finley restored it to the shape in which found and replaced it on the foundation block from which it had been removed. The surveillance continued all through the night without result. About six o'clock on the morning of the 27th, Finley telephoned to Narcotic Agent Fritz J. Engelking. Thereafter, Engelking went before the United States Commissioner and obtained a search warrant for the premises upon his affidavit to the following effect:

(~~has reason to believe~~)
"That he (is positive)          that
(~~on the person of~~)
(on the premises known as) Mecca's Drive-In Grocery 5006 Jensen Drive, Houston, Texas, and being a wood frame green in color, with composition roof, one story building, as well as all other buildings on the same lot, bearing the same number under the city numbering system as above in the Sou. District of Texas, there is now being concealed certain property, namely marihuana
in violation of Title 26, U.S.C. Section 4744(a) which are
being concealed in and under the above described premises
    here give alleged grounds for search and seizure

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

"Information from a reliable source was received that Marihuana contained in tobacco cans and a sack were concealed under the above described building and inside one of

---

1. Internal Revenue Code 1954, 26 U.S. C.A. § 4741(a).

2. From what he considered to be reliable source, and which he failed to disclose in his testimony only because of objections of defendant's counsel.

the above described buildings. The marihuana has been located under the building by Narcotic Agent, W. T. Finley.

"1. The Federal Rules of Criminal Procedure provide: 'The warrant shall direct that it be served in the daytime, but if the affidavits are positive that the property is on the person or in the place to be searched, the warrant may direct that it be served at any time.' (Rule 41(C)"[3]

The warrant authorized a search of the premises "at any time in the day or night." Engelking then joined his fellow officers in the surveillance, and they continued patiently but uneventfully watching until about 8 o'clock that night. During the afternoon the appellant was seen on several occasions at the building and in the general area. About 8:00 P. M., they observed appellant drive onto the premises, get out of his automobile, walk to some steps, talk briefly to some woman who opened a door, then go to the point of concealment and reach underneath the house. Engelking then turned on the headlights of his car, which "illuminated the defendant in his maroon shirt, standing with the bag, standing straight and facing me by the headlights." Appellant "stooped down and threw something underneath this building, and then he ran around the corner." The officers closed in and arrested him.

After appellant's arrest, Officer Jones crawled under the building and recovered the brown paper bag at the approximate place where appellant had been seen to throw something. Upon a search of the premises, additional contraband was found underneath the building. The inventory of property accompanying the search warrant describes the following:

"Two cans marihuana weighing about 900 grains in Half & Half tobacco cans. Loose marihuana weighing about 28 ounces contained in two brown paper bags. Glass jar containing marihuana seeds. 12 Half & Half and 12 Prince Albert tobacco cans containing tobacco."

As to a statement from appellant, Mr. Finley testified:

"A. I told him that he did not have to make any statement to me, but any statement he did make to me could be held against him. Detective Jones told him the same thing. I told him that under the Fifth Amendment of the Constitution of the United States, he didn't have to say anything. He gave me his name, age, address, birth and et cetera. I asked him to tell me the truth with reference to this matter. He said, 'I can't tell you the truth. I mean, it is not mine, and I won't claim it.' And I told him, 'Well, in view of that, well if you are lying about the fact that you are not going to claim it, then, that it is yours,—' and, well, he said, 'I can't tell you the truth about that.' He said, 'It is not mine. I am not going to claim it, but I am lying.' "

The return of the search warrant and affidavit accompanied by the inventory was made on April 3, 1957. The indictment was returned on May 13, 1957. The appellant's counsel filed a motion to quash the indictment on June 4, 1957. The trial took place on October 22 and 23, 1957. No motion for return of property or to suppress evidence was made prior to the trial.

Upon the trial, the defendant objected to Officer Finley's first search or inspection of the premises made before the search warrant issued, and also objected to the sufficiency of the affidavit and search warrant, and moved to quash the search warrant and suppress the evi-

**3.** It might be noted that in cases involving a violation of certain statutes, including the one here involved, Title 18 U.S. C.A. § 1405(1), now provides that:

"(1) a search warrant may be served at any time of the day or night if the judge or the United States Commissioner issuing the warrant is satisfied that there is probable cause to believe that the grounds for the application exist."

dence. The Government opposed these objections and motions on their merits, and also insisted that they should not be entertained because the defendant had not moved for return of the property and to suppress the evidence before trial, calling attention to the requirements of Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A. Without indicating the ground of its action, the court overruled the objections of the defendant and his motions to quash the search warrant and suppress the evidence.

The appellant specifies and insists upon three alleged errors:

"Specification No. One.

"The Court committed material error in permitting Officers Finley and Jones to testify over Appellant's objection as to an exploratory search of Appellant's business building and the result of such search, without a search warrant.

"Specification No. Two.

"The Court erred in overruling Appellant's Motion to suppress the evidence offered, over Appellant's objection, of Officers Finley and Jones, obtained by a search of Appellant's curtilage without a search warrant.

"Specification No. Three.

"The Court erred in overruling Appellant's Motion to Quash Search Warrant, issued in this case, which search warrant was issued upon information and belief and based upon an exploratory and illegal search made theretofore."

■ The Government insists that the appellant has no standing to complain of any alleged illegal search because he denied ownership of the marihuana and failed to prove ownership of or interest in the premises searched, citing Scoggins v. United States, 1953, 92 U.S.App.D.C. 29, 202 F.2d 211, and Calhoun v. United States, 5 Cir., 1949, 172 F.2d 457. We do not agree. In the form in which Agent Finley testified to appellant's disclaimer of the marihuana, "I am not go-ing to claim it, but I am lying," the jury could have inferred just the opposite.

■ Moreover, there was affirmative testimony that appellant operated the business conducted on the premises, which was not denied, and no evidence was offered to the contrary. Possession of the premises searched, without reference to an interest in the property seized, gave the requisite standing to raise the issue as to admissibility of evidence resulting from an alleged illegal search. United States v. Pepe, 2 Cir., 1957, 247 F.2d 838, 841; Work v. United States, 1957, 100 U.S.App.D.C. 237, 243 F.2d 660, 662; United States v. Fowler, D.C. S.D.Cal.1955, 17 F.R.D. 499, 502. Neither of the cases cited by the Government holds to the contrary.

The Government further insists that appellant waived any complaint of illegality of either search by failure, before the trial, to move for a return of the property or to suppress the evidence as required by Rule 41(e), Federal Rules of Criminal Procedure:

"(e) *Motion for Return of Property and to Suppress Evidence.* A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or

trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

■■ As stated in the notes of the Advisory Committee, that rule is a restatement of the theretofore existing law and practice. The sound judicial practice is not to interrupt the orderly course of trial and break the continuity of the jury's attention by conducting a collateral inquiry into the question of whether evidence offered, otherwise competent, was lawfully or unlawfully obtained. Segurola v. United States, 1927, 275 U. S. 106, 112, 48 S.Ct. 77, 72 L.Ed. 186; Nardone v. United States, 1939, 308 U.S. 338, 341, 342, 60 S.Ct. 266, 84 L.Ed. 307; United States v. Sheba Bracelets, 2 Cir., 1957, 248 F.2d 134, 142. Strict observance of that practice is more important since the enactment on July 18, 1956 of the statute now appearing as 18 U.S.C.A. § 1404, which permits the United States, in cases like this one, to appeal from an order granting a motion to suppress evidence made before trial. A defendant should not be permitted to thwart the Government's right of appeal under that statute by the stratagem of waiting until jeopardy has attached before questioning the validity of a search and seizure. Of course, however, that may be unavoidable when there has been no opportunity to present the matter in advance of trial. "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." Gouled v. United States, 1921, 255 U.S. 298, 313, 41 S. Ct. 261, 266, 65 L.Ed. 647; see, also, Amos v. United States, 1921, 255 U.S. 313, 316, 41 S.Ct. 266, 65 L.Ed. 654. So, under the terms of Rule 41(e), "The motion shall be made before trial or hearing *unless opportunity therefor did not exist or the defendant was not aware*

*of the grounds of the motion * * * ."* (Emphasis supplied.)

Appellant insists that he came within that exception, and urges in his brief:

"The Appellant did not know and had no means of knowing that his building had been searched secretly and without a warrant at 2:00 A.M. on March 27, 1957, by the witness Finley, until said witness so testified upon the trial of this case. He immediately objected and filed a motion to suppress and to quash the search warrant."

The Government takes issue with that insistence, and points out that the appellant was informed by the affidavit for the search warrant that "The marihuana has been located under the building by Narcotic Agent, W. T. Finley," and that, thereby, the appellant must have known that Finley had searched or inspected the premises.

■ On that issue, we would decide with the Government if the decision were left to this Court. We do not think that this Court can review the district court's decision to entertain the motion on its merits, for the concluding clause of Rule 41(e) reads, " * * * but the [district] court in its discretion may entertain the motion at the trial or hearing."

■ When the district judge did not refuse to consider the merits of the motion to suppress because of the defendant's delay, and did not assign such delay as a ground for ruling against the defendant, we must assume that he exercised his discretion to "entertain" the motion and to give the defendant the benefit of a ruling on the merits. As said by Judge Learned Hand in United States v. Di Re, 2 Cir., 1947, 159 F.2d 818, 820, affirmed 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210:

" * * * It would be a parody on justice now to hold that, although the judge was wrong in the decision which he did make, nevertheless, since he might have refused to make it at all, DiRe may not complain of the error."

We hold, then, that the appellant has standing, and is not bound by waiver; so that the question of whether either search was illegal must be decided.

■■ When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable. 52 Am.Jur., Trespass, § 41. In any event, evidence is not rendered inadmissible merely because it has been obtained by a simple trespass upon land. The protection of the Fourth Amendment is not that extensive: "The right of the people to be secure in their persons, *houses*, papers, and effects, against *unreasonable* searches and seizures, shall not be violated * * *." (Emphasis supplied.)

In the language of Mr. Justice Holmes, speaking for the Court in Hester v. United States, 1924, 265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898:

"* * * the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226."

See, also Edwards v. United States, 10 Cir., 1953, 206 F.2d 855, 856; Martin v. United States, 5 Cir., 1946, 155 F.2d 503, 505.

In the Hester case, supra, Mr. Justice Holmes further observed: "It is obvious that even if there had been a trespass, the above testimony was not obtained by an illegal search or seizure." 265 U.S. at page 58, 44 S.Ct. at page 446. To like effect, see Janney v. United States, 4 Cir., 1953, 206 F.2d 601, 604; Koth v. United States, 9 Cir., 1926, 16 F.2d 59, 61; McBride v. United States, 5 Cir., 1922, 284 F. 416, 419; Taylor v. Fine, D.C.S.D.Cal. 1953, 115 F.Supp. 68, 71; United States v. Rogato, D.C.M.D.Pa.1930, 39 F.2d 171, 175.

■ The Fourth Amendment protects against *"unreasonable* searches and seizures." Reasonableness is often a question of degree as to "when the right of privacy must reasonably yield to the right of search." Johnson v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436.

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. Go-Bart Importing Co. v. United States, 282 U.S. 344, 357 [51 S.Ct. 153, 158, 75 L.Ed. 374]. Reasonableness is in the first instance for the District Court to determine." United States v. Rabinowitz, 1950, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653.

See, also, Harris v. United States, 1947, 331 U.S. 145, 150, 67 S.Ct. 1098, 91 L. Ed. 1399.

What may be unreasonable in a search of a man's house,[4] may be entirely reasonable in a search of his place of business. Harris v. United States, supra, 331 U.S. 145, 151, footnote 15, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, supra, 339 U.S. 56, 64, 70 S.Ct. 430, 94 L.Ed. 653; Drayton v. United States, 5 Cir., 1953, 205 F.2d 35, 36.

■ In the present case, Officer Finley's preliminary search did not extend to the inside of the store building, but was confined to the top of a foundation block, only a foot or two removed from the "open fields" which are not within the protection of the Fourth Amendment, Hester v. United States, supra.

■ The nature of the search also is an important circumstance in determining reasonableness. Mr. Finley's preliminary search was not of a gen-

4. For example, see the case relied on by appellant, Brock v. United States, 5 Cir., 1955, 223 F.2d 681, 684, including its citation of McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

eral exploratory nature but might more accurately be considered a mere inspection to verify the information which he had received. Compare Davis v. United States, 1946, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; Harris v. United States, supra; United States v. Rabinowitz, supra; United States v. Guido, 7 Cir., 1958, 251 F.2d 1, 4.

As to warrants, including search warrants, the Fourth Amendment provides:

> " * * * and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

In Brinegar v. United States, 1949, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, the Court said:

> "In dealing with probable cause * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved."

Evidence which would not be competent or admissible upon the trial may nevertheless furnish "probable cause" for the issuance of a warrant. Brinegar v. United States, supra; Weise v. United States, 9 Cir., 1958, 251 F.2d 867, 868.

Whether or not the information which Mr. Finley had received "from a reliable source" would have sufficed need not be decided. Certainly, after that information had been verified by Finley's personal inspection, it constituted "probable cause." The Commissioner had a right to consider Officer Finley's location of the marihuana under the building even though the exigencies of the occasion made it necessary, or certainly convenient, for that information to be conveyed to the Commissioner by the hearsay testimony of Agent Engelking. We conclude that the search warrant was issued upon probable cause supported by affidavit, and complied with the requirements of the Fourth Amendment.

Moreover, the appellant was legally arrested in the very act of committing a felony, and the search immediately thereafter would be justified as incident to his arrest even if there had been no search warrant. Rent v. United States, 5 Cir., 1954, 209 F.2d 893, 897, and cases there cited.

The judgment is therefore

Affirmed.