Jewel POLK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17017.

United States Court of Appeals
Ninth Circuit.

May 23, 1961.

Clark A. Barrett, San Francisco, Cal., for appellant.

Laurence E. Dayton, U. S. Atty., John Kaplan and Charles W. Getchell, Jr., Asst. U. S. Attys., San Francisco, Cal., for appellee.

Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Jewel Polk was indicted on a single count charging him with the unlawful concealment of heroin in violation of 21 U.S.C.A. § 174, and following a trial to the court was found guilty and sentenced to fifteen years' imprisonment. This is an appeal from that judgment.

The evidence showed that on the evening of June 3, 1960, officers of the San Francisco Police Department delivered $180 in marked bills to an informer with instructions to make a purchase of narcotics. He gave the money to one Stanciell who went to the residence of appellant, a known trafficker of narcotics. Twenty minutes later Stanciell left appellant's home and proceeded directly to the place where he and the informer had arranged to meet. As police officers approached, Stanciell placed something in his mouth and swallowed it. He was searched but found to possess neither narcotics nor any of the money and he refused to divulge any information. Thereupon, four police inspectors accompanied by a federal narcotics agent went to appellant's residence. This was a two-story building divided into two flats, each having a separate entrance. Appellant inhabited the upper flat while another family occupied the remaining level below.

On arrival, Martin, one of the inspectors, tapped on the glass front door which had a partially drawn shade and shouted "Police! Open the door." When no one answered Martin directed his flashlight under the shade, and observed a man standing at the top of the inside stairs. Martin then shone his light on his badge and called out that he was a policeman and wanted to talk, but instead of coming to the door the man

withdrew into the interior of the flat, whereupon Martin called to another officer and the federal narcotics agent to "cover the back."

The route to the rear of the premises lay to the side of the house and along a narrow alleyway or corridor between appellant's building and the house next door. At the end of this corridor was a solid door set into a wall that connects the two houses. Beyond the door was a passageway walled on either side and covered by an overhanging portion of the building in which appellant lived. The end of the passageway opened into the back yard of the premises from which stairs led up to appellant's back door.

The two officers hastened to the back of appellant's premises and upon arriving there proceeded to climb the back stairs. As they did so one of them observed a person, later revealed to be the appellant, standing on the roof over the passageway and in the act of throwing a package onto the roof of the adjoining house. The officers then forced open the rear door of the appellant's flat, went to the window from which appellant had reached the roof, commanded him to return to the house, and placed him under arrest. Afterward the officers recovered the package and in doing so discovered the marked money lying on the roof where the appellant had been standing. The package contained a quantity of heroin and $1,400.

The appellant urges the following as error on appeal:

(1) the trial court's finding of guilt on insufficient evidence;

(2) the admission of the physical evidence which was seized and the testimony as to what was observed in the course of an alleged illegal search and seizure;

(3) the admission of a quantity of narcotics differing in the amount stated in the indictment, and supposedly lacking a complete connection between the seizing officers and the examining chemist; and

(4) the admission of the $180 over the objection that it was immaterial to the charge of the indictment.[1]

■ We find the foregoing evidence sufficient to sustain the finding of guilt. However, since the officers had neither a search warrant nor a warrant for appellant's arrest, the admissibility of the evidence obtained after the officers' entry into the back yard is the important issue that faces us. The remaining specifications of error have been thoroughly considered and found to be without merit.

■ It is true, as the appellee urges, that a search may be made when it is incident to a lawful arrest. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; and a legal arrest for a violation of the narcotics laws may be made despite the absence of a warrant "where the violation. is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation." 26 U.S.C.A. § 7607. However, the record does not disclose that the officers had sufficient information prior to their entry

1. A pre-trial hearing was held to consider a motion to suppress the evidence which had been seized and any information obtained as a result of such seizure. The motion was heard and denied by a judge other than the one presiding at the trial. When the objections to this evidence were renewed at the trial, the court overruled them, relying on the order denying suppression. We note from the memorandum and order which denied the motion that one of the reasons given by the hearing judge for his decision was lack of standing on the part of appellant to so move and at the same time disclaim any interest in the property seized and the premises searched. However, the Supreme Court, in Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, a case decided after the filing of the pretrial order, has rejected that theory, saying, "the possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)." 362 U.S. at page 264, 80 S.Ct. at page 732.

through the door to the passageway that could justify appellant's arrest. It was not until the information they did have was supplemented by their observation of appellant's bizarre behavior on the roof at midnight, that there existed reasonable grounds for making an arrest. Since this activity was observed prior to the arrest and was necessary to justify it, our inquiry is not whether the officers' observation was incident to an arrest but rather whether the officers viewed appellant's actions from a place within the protection of the Fourth Amendment. Therefore, to resolve the question before us it must be determined whether the area enclosed behind the passageway's door is so protected.

It has been held that such protection does not extend to open fields, Hester v. United States, 1924, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; nor to a cabin 230 feet from a dwelling, Dulek v. United States, 6 Cir., 1926, 16 F.2d 275; but it has extended to an enclosed back yard, Hobson v. United States, 8 Cir., 1955, 226 F.2d 890, 894; and spying through a transom from a common hallway after breaking into a rooming house has been held a violation of the Fourth Amendment, McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; so has standing on a man's premises and looking in his bedroom window, Brock v. United States, 5 Cir., 1955, 223 F.2d 681; and searching a locked cupboard in a common hallway, United States v. Lumia, D.C.N.Y.1941, 36 F.Supp. 552.

As in the Maryland decision of Harris v. State, 1953, 203 Md. 165, 99 A.2d 725, 727, "this case falls between the extremes of an invasion of purely private premises which are clearly protected, * * * and entry upon an open field which the decisions hold not within the protection even though a civil trespass may be perpetrated * * *" However, it cannot be determined at what point between these extremes the present case rests. We are unable to ascertain from the record who used or was permitted to use the passageway, yard and back stairs, the extent of such use, the nature of the yard itself as to its being enclosed or open to public view, and other facts that would suggest whether the appellant's constitutional rights under the Fourth Amendment had been invaded. Our view of the case makes such facts, which tend to show the degree of privacy the appellant enjoyed in those places, of paramount importance.

The record's paucity requires that we remand the case to the district court with directions to hold a hearing permitting the parties to offer evidence on this isolated issue. Thereafter, the district court shall reach a decision and in doing so determine the ultimate question of whether the physical evidence introduced at trial was procured by reason of an illegal search and seizure.

The judgment of the district court is vacated and the case is remanded for further proceedings consistent with the views expressed in this opinion.