**UNITED STATES of America, Plaintiff,**

v.

**Jewel POLK, Defendant.**

**Crim. No. 37013.**

United States District Court
N. D. California, S. D.

Dec. 29, 1961.

Cecil F. Poole, U. S. Atty., William J. Cooney, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Clark A. Barrett, San Francisco, Cal., for defendant

ZIRPOLI, District Judge.

On April 25, 1960, defendant was convicted in this Court upon a one-count indictment charging him with the unlawful concealment of heroin in violation of 21 U.S.C.A. § 174. An appeal was taken from the judgment of conviction. The Court of Appeals, 9 Cir., 291 F.2d 230, found all of the specifications of error to be without merit, save one which asserted that certain evidence had been erroneously admitted because it had been secured by means of an unlawful search and seizure. It was the view of the Court of Appeals that the lawfulness of the procurement of this evidence depended upon the degree of privacy enjoyed by defendant at a place from which police officers observed behavior on his part which gave them reasonable grounds for placing him under arrest. Because of the record's paucity regarding the character of this place, the Court of Appeals vacated the judgment and remanded the cause to this Court with instructions to hold a hearing permitting the parties to offer evidence on this isolated issue. The Court of Appeals further instructed this Court to reach a decision on this issue and "in doing so to determine the ultimate question of whether the physical evidence introduced at trial was procured by reason of an illegal search and seizure."

Between the time of the filing of the mandate of the Court of Appeals with this Court on July 3, 1961 and the hearing held in accordance therewith, the trial judge died. At the hearing on the mandate, the parties stipulated that in disposing of the case in accordance with the directions of the Court of Appeals, the hearing judge should consider, in addition to the evidence offered at the hearing, all evidence previously in the record, including both that introduced at the trial and at a pre-trial hearing upon a motion to suppress.

The record shows that the night of defendant's arrest, January 3, 1960, police officers had under surveillance one Stanciell, who had been given $180.00 in

marked currency by an informer to purchase narcotics. Upon receiving the money, Stanciell went immediately to defendant's residence, remained there some twenty minutes, and then proceeded to a place where he had agreed to meet the informer. As the police officers approached to arrest him, he was observed to put something in his mouth and swallow it. He refused to give any information to the officers, and neither the marked money nor any narcotics were found on his person.

The police officers then went to defendant's residence for the purpose of questioning him regarding the whereabouts of the marked money. Defendant resided in a flat which comprised the top floor of a three-story house on Pine Street in San Francisco. He shared the flat with a woman friend who owned the house. The second floor of the house was an independent flat occupied by a married couple and their three children. The ground floor was a garage. The two flats had adjacent glass-paneled front doors which opened off a common entrance porch. The door to the upper flat opened onto an inside staircase leading up to the flat. This door had a partially drawn shade. One of the officers rapped on this door and shouted "Police. Open the door." Upon receiving no response, he directed the beam of a flashlight through the glass of the door below the shade and saw a man standing at the top of the stairs. Although the officer again identified himself, the man withdrew out of sight.

Two of the other officers then proceeded to the rear of the house via a passageway at the left between it and the adjacent house. This passageway is approximately 3½ feet wide and 63½ feet long. The second story of the house overhangs and covers this passageway for a distance of 12 feet midway along it. At the beginning of this overhang there is a solid board gate reaching completely across the passageway. The two officers found it slightly ajar, swung it open and went on through the passageway to the rear of the house.

At the point where the passageway opens into the rear yard there is an outside stairway with three landings. At the first landing there is a door opening into the lower flat and at the top landing there is a door opening into the upper flat. The middle landing is at a turn in the staircase a few feet below the level of the roof of the portion of the lower flat which overhangs the passageway. The two officers climbed the stairway to a point just above this middle landing, whereupon they observed defendant crouched on the roof of the overhanging portion of the lower flat and saw him throw a package on the roof of the adjacent house. The officers called to defendant to remain where he was. One of them then forced the rear door of the upper flat and went through it to the window from which defendant had climbed on the roof. He ordered defendant to climb back into the house and placed him under arrest.

■ The officer then observed the missing $180.00 in marked currency scattered on the roof of the overhang. From the roof of the adjacent house to which the defendant had been seen to throw a package, the officer recovered a cellophane-wrapped packet containing $1,400.-00 in currency and several balloons filled with heroin. The discovery of this physical evidence, as well as the observation of defendant's behavior on the roof which gave reasonable grounds for his arrest, all resulted from the action of the police officers in proceeding to the rear staircase leading to defendant's flat. Thus, in the view of the Court of Appeals, the pivotal question is whether the police officers impinged upon defendant's constitutionally guaranteed freedom from unreasonable searches by going into the enclosed rear yard and climbing the staircase.

In commenting on this question and the record then before it, the Court of Appeals said:

"We are unable to ascertain from the record who used or was permitted to use the passageway, yard and back stairs, the extent of such use,

the nature of the yard itself as to its being enclosed or open to public view, and other facts that would suggest whether the appellant's constitutional rights under the Fourth Amendment had been invaded. Our view of the case makes such facts, which tend to show the degree of privacy the appellant enjoyed in those places, of paramount importance."

Polk v. United States, 291 F.2d 230, 232. (9th Cir. 1961)

The undisputed evidence now in the record as to such facts shows that insofar as defendant was concerned the rear yard and staircase were nothing more than a means of access to the back door of his flat. The rear yard is an uncultivated dirt area approximately 58 feet long and 25 feet wide. It is enclosed on the left by a board fence 5½ feet high and the wall of a one-story dwelling on the adjoining premises. It is enclosed on the right by a fence 5½ feet high, and at the rear by a fence 4 feet 7 inches high atop a concrete wall 4 feet 10 inches high. The photographs in evidence reveal numerous cracks and knotholes in the board fencing through which the yard could be viewed from the adjacent premises. The entire yard is open to view from the upper stories of numerous surrounding buildings.

At the time of his arrest, defendant and the woman who owned the house had lived in the upper flat only a few weeks. The woman testified that they had made no use of the back yard. The family who occupied the lower flat had lived there for a number of years and during this time had enjoyed the free use of the rear yard. They used it principally as a play area for the three children. The children's neighborhood playmates came and went freely through the passageway to the yard. The passageway gate had neither a latch nor a lock. Perry Sowell, the father of the family in the lower flat, had placed a rock behind the gate which was used at times to hold it shut. During the years the Sowells had resided in the lower flat, they had intermittently had garbage collected from the rear yard.

When the police officers went to defendant's residence on the night of his arrest, they did so for the perfectly proper purpose of seeking to obtain information regarding the missing marked currency. After they had rapped and shouted at the front door without response, two officers attempted to carry out their mission by going to the rear door. They did so by proceeding through a passageway, pushing past a gate having no latch and standing ajar, and climbing an outside staircase, all of which were for the joint use of the residents of both flats in the house, and which, to all appearances, were open for the use of tradesmen and other persons having legitimate business with any of the residents. Considering their purpose, there appears to be no basis for concluding that their action was in any way an unreasonable invasion of defendant's privacy.

"The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. * * * Reasonableness is in the first instance for the District Court to determine." United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 434, 94 L.Ed. 653. See also Giacona v. United States, 257 F.2d 450, 456 (5th Cir. 1958).

"Factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," (Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949) cause this trial judge to conclude that since no search of the common passageway, yard and stairway was contemplated by the officers when they first entered such places, such trespass, if any there was, is justifiable and not an unreasonable invasion of the defendant's privacy. Hence, all that the officers there subsequently saw and the marked money and cellophane-wrapped package containing heroin recovered by reason of such direct observation were not the products of an unreasonable search and seizure and therefore admissible in evidence.

■ In reaching this decision the court is not unmindful of the decision reached in the 8th Circuit in the case of Hobson v. United States, 226 F.2d 890 (1955). As stated in Rabinowitz, supra, the reasonableness of a search depends upon the facts and circumstances of each case.

In the Hobson case, there was no compelling need for immediate action by the officers. There the visit to the residence of the defendant was for the purpose of arresting Regina Hobson. To this the court said, "You gentlemen knew of the violation of the law by Regina Hobson for some thirty days. You should not have gone to those premises for the purpose of arresting her without a warrant of arrest, your sole purpose being, as you have all testified, to go there to arrest Regina Hobson." Then again the court said, "There is considerable doubt whether probable cause existed at this late date for Regina's arrest without a warrant under all the facts and circumstances disclosed by the record. There is also considerable doubt whether the officers' purpose in visiting the defendant's home was to arrest Regina." This factual situation is in no way comparable to the reasonable and immediate action required by the officers in the instant case to follow up and ascertain the whereabouts of the marked money and the identity of the recipient thereof.

Furthermore, in the Hobson case, there was an unlawful breaking and entry on the part of the officers before such officers had knowledge of the contents of the package or even reasonable cause to believe that the same contained narcotics.

In the instant case the court finds from all the facts and circumstances that the officers had reasonable cause to believe that the package thrown onto the adjoining roof by the defendant in the manner and under the circumstances by which he did so (not onto his own property as in the Hobson case) contained narcotics.

In the Hobson case there is no indication from the opinion whether or not the rear yard of the defendant was for the exclusive use of the defendant, whereas in the instant case the defendant made no use of the rear yard and the same and the passageway and staircase were in common use by the tenants of the lower flat and those having business or social relations with them.

The foregoing are some of the factual differences that distinguish the instant case, and therefore bear directly on the degree of privacy enjoyed by the defendant in the places from which the officers made their observations.

Furthermore, it may well be said in the instant case, in which reasonableness is a matter of degree, that considering the circumstances which caused the officers to go to the premises here involved, and considering the nature of the premises from which the officers made their observations, "the right of privacy must reasonably yield to the right of search." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

By reason of the facts preceding their entry to the passageway, yard and back stairs, and by reason of the observable conduct of the defendant, the officers had more than reasonable cause to believe that the defendant was then and there in the act of committing a felony (concealment of narcotics) and properly placed him under arrest.

■ From the evidence the court is satisfied beyond a reasonable doubt that the defendant is guilty of the charge specified in the indictment, and it so finds.