UNITED STATES of America

v.

Abraham MINKER, also known as Abe Minker, Appellant.

No. 13854.

United States Court of Appeals. Third Circuit.

Argued Oct. 4, 1962.

Decided Dec. 4, 1962.

Rehearing Denied Jan. 16, 1963.

Certiorari Denied March 25, 1963.

See 83 S.Ct. 952.

Jacob Kossman, Philadelphia, Pa. (Leon H. Kline, Stanford Shmukler, Philadelphia, Pa., on the brief), for appellant.

J. Shane Creamer, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., Lawrence Prattis, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before STALEY and FORMAN, Circuit Judges, and LANE, District Judge.

STALEY, Circuit Judge.

Appellant, Abraham Minker, was convicted on five counts of a seven-count indictment charging him with willfully attempting to evade wagering excise taxes in violation of the Internal Revenue Code of 1954, § 7201.[1] The relevant period of alleged attempted evasion included November 1959 through March 1960. Each month of that period was charged as a separate violation.

During the summer of 1959, agents of the Internal Revenue Service conducted an intensive investigation of gambling operations in the vicinity of Reading,

---

[1] "7201. Attempt to evade or defeat tax
"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years. or both, together with the costs of prosecution." 26 U.S.C.A. (I.R.C.1954) § 7201.

Pennsylvania. Suspected numbers writers and operators were placed under surveillance. On several evenings during this period, one of the suspects was observed entering appellant's second-floor apartment at 1955 Hampden Boulevard, Reading, Pennsylvania, with a package. On each of these occasions the visitor emerged from the apartment without the package.

On October 3, 1959, a raid was conducted on premises located at 728 Lancaster Avenue, Reading, Pennsylvania. Numerous adding machines, numbers slips, summary sheets, and various other articles essential to a large scale numbers operation were seized. On the same day, appellant's apartment was searched pursuant to a warrant. However, no evidence incriminating him in the gambling operation was found. On March 25, 1960, the government conducted another raid on a numbers bank in a farmhouse in Berks County. Again various adding machines, numbers slips, a tally sheet, and other pertinent articles were seized. However, no direct evidence of Minker's participation in the lottery was found. In the interval between the two raids, government agents had arranged with Anthony Damore, a trash collector, to permit them to examine the contents of a trash receptacle located on the premises of the Hampden Boulevard apartment building, but outside the structure. The management of the apartment house had hired Damore to remove the trash three times a week. The receptacle was used by four tenants, as well as the building superintendent. The contents were examined off the premises, and the agents retained certain adding machine tapes and other slips of paper. Handwriting identified as Minker's appeared on many of these items. It is the taking of these articles from the trash can that is challenged here as being an unreasonable search and seizure.

Prior to trial appellant presented a motion to suppress this evidence. The district court, after hearing, denied the motion, holding that Minker had abandoned the articles prior to the seizure by the government. At the trial objection was made to the introduction of this evidence. We think it abundantly clear that not only had Minker abandoned the property but, in addition, that the trash can was located outside an area that would entitle him to constitutional protection.

Whether a given area is within the protected curtilage of one's dwelling depends upon a number of factors, including its proximity to the dwelling, whether it is within the enclosure surrounding the dwelling, and its use as an adjunct to the domestic economy of the family. Care v. United States, 231 F.2d 22 (C.A.10), cert. denied, 351 U.S. 932, 76 S.Ct. 788, 100 L.Ed. 1461 (1956). Of course, factors of paramount importance in considering a Fourth Amendment claim are the nature of the individual's interest in and the extent of the claimed privacy of the premises searched. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

As we have previously noted, Minker's apartment was on the second floor of the building, whereas the receptacle was located outside the structure. The management of the apartment house placed the receptacle on the premises and made the agreement with Damore for the removal of the trash. More important, appellant's interest was confined to the right to use it in common with three other tenants in addition to the building superintendent. We conclude that such an insubstantial interest does not give him standing to assert a constitutional right against a search of the receptacle's contents.

Abandonment, of course, is largely a question of intent. United States v. Wheeler, 161 F.Supp. 193, 198 (W.D.Ark., 1958). Intent, in turn, is a question of fact. Schauffler v. United Ass'n of Journeymen & Apprentices of the Plumbing Industry, Local 420, 230 F.2d 572, 576 (C.A.3), cert. denied, 352 U.S. 825, 77 S.Ct. 37, 1 L.Ed.2d 48

(1956). The district court, in denying the motion to suppress, filed a memorandum opinion [2] in which it fully set forth the facts upon which it based its holding that there had been an abandonment. We need not here again recite them but need only say that they amply support its conclusion. The appellant cites United States v. Merritt, 293 F.2d 742 (C.A. 3, 1961), and Work v. United States, 100 U.S.App.D.C. 237, 243 F.2d 660 (1957). Those cases are inapposite. In both of them, the acts which revealed the evidence were the direct consequence of an illegal entry. This was true also in Polk v. United States, 291 F.2d 230 (C.A.9, 1961), although the decision there turned upon whether the area was within the protection of the Fourth Amendment.

■■ Minker challenges the sufficiency of the evidence to connect him with the lottery and to establish his intent to evade the tax. Of course, since the jury has brought in a verdict of guilty, we must view the evidence together with all inferences reasonably and logically deducible therefrom in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Giuliano, 263 F.2d 582 (C.A.3, 1959). From the facts adduced the jury could reasonably have found that the papers in the trash can contained the handwriting of the appellant; that amongst these papers were daily summaries of gross wagers, expenses, and net profits of the entire numbers enterprise; that they were computed for the owner or operator of the lottery; that Minker was the owner or operator of the lottery; that they were records required to be kept for computing the taxes in question; and that appellant had destroyed them. We think that the surreptitious nature of the operation of the lottery by one in control of it and the destruction of the records in the trash receptacle was evidence not merely of a passive failure to keep records or pay the tax, but of a willful intent to evade and defeat the tax. Such conduct falls squarely within that proscribed in Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943). See also Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959). We might add here that the district court carefully instructed the jury that if the destruction was for the sole purpose of avoiding prosecution under state law the necessary intent would not be established.

It is urged that these were not records of the sort required to be kept. But in several instances this information indicated the daily gross wagers of the lottery. Hence, this data was required to be maintained by § 4403 of the Internal Revenue Code of 1954.[3] The fact that a similar summary was retained at the numbers bank is immaterial, for the jury, by its verdict, found that the records in the trash can were in fact those of the operator of the lottery.

In this regard appellant's reliance on United States v. Plisco, 192 F.Supp. 337 (D.D.C. 1961), is misplaced. The question treated there was the admissibility of such records into evidence as an exception to the hearsay rule. Indeed, that decision would appear to support our conclusion since the court found that the purpose of the records was to provide documentary support in dealings with the Internal Revenue Service.

■ Consistent with his assertion that the government proved only a failure to file, appellant urges that he was entitled to have the jury instructed on this lesser offense.[4] It is to be noted that the indictment does not charge that

2. United States v. Minker, 191 F.Supp. 683 (E.D.Pa., 1961).

3. "§ 4403. Record requirements
    "Each person liable for tax under this subchapter shall keep a daily record showing the gross amount of all wagers on which he is so liable, in addition to all other records required pursuant to section 6001(a)." 26 U.S.C.A. (I.R.C.1954) § 4403.

4. "§ 7203. Willful failure to file return, supply information, or pay tax
    "Any person required under this title to pay any estimated tax or tax, or required

the failure to file was willful.[5] More important, the only evidence of a willful failure to file, i.e., the destruction of the records and the clandestine operation of the lottery, was the very evidence tending to prove a willful attempt to evade. Hence, the jury would have had no basis for finding Minker innocent of the felony but guilty of the misdemeanor. In these circumstances, the two offenses covered the same ground. Accordingly, appellant was not entitled to the requested instruction. See Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956).

■ It is asserted that the following portion of the district court's instruction is the equivalent of a directed verdict of guilty:

> "If, on the other hand, you are persuaded of the existence of the lottery during this period, that Minker conducted it, and while so conducting it, that he willfully and knowingly attempted to evade and defeat any excise tax due and owing the Government of the United States, and that the amount was either what the Government contends, or, if not, was a substantial amount, then you would find him guilty."

Quite apart from the fact that no objection was made to this charge as required by Rule 30, Federal Rules of Criminal Procedure, the quotation of the instruction eviscerates the argument. The court merely advised the jury that if the government proved its case, Minker was to be found guilty. Hewitt v. United States, 110 F.2d 1, 10 (C.A.8), cert. denied, 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409 (1940).

■ Appellant cites no case for the proposition that sentences on separate counts for each month of attempted evasion are improper. Indeed, he concedes that gambling excise tax returns must be filed monthly and that the taxes are due monthly. This is the unit of time which is the basis for the tax, just as a year is the period for which income taxes are due. This being so, each month of attempted evasion constituted a separate offense. See United States v. Shaffer, 291 F.2d 689 (C.A.7), cert. denied, 368 U.S. 915, 82 S.Ct. 192, 7 L. Ed.2d 130 (1961).

We have considered the other questions raised and find them to be without merit.

The judgment of the district court will be affirmed.

by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution." 26 U.S.C.A. (I.R.C.1954) § 7203.

5. The material part of each count charges that Minker
"* * * did willfully and knowingly attempt to evade and defeat the said excise tax * * * by failing to make such excise Tax Return * * *; by failing to pay * * * the said excise tax due * * * and by concealing and attempting to conceal from all proper officers of the United States of America the true and correct amount of wagers accepted * * *."