**UNITED STATES of America,**

v.

**Quessie Lee LEWIS, Defendant.**

United States District Court
S. D. New York.
March 18, 1964.

Robert M. Morgenthau, U. S. Atty., for S. D. New York for the United States; Martin R. Gold, Asst. U. S. Atty., of counsel.

Henry K. Chapman, New York City, for defendant.

FREDERICK van PELT BRYAN, District Judge:

Defendant, Quessie Lee Lewis, was indicted for receiving, concealing and facilitating the transportation of narcotics in violation of 21 U.S.C. §§ 173, 174. She moves, pursuant to Rule 41(e), F.R.Cr.P., to suppress as evidence against her a quantity of heroin which was seized by narcotics agents during the course of what she alleges was an unlawful search of her apartment on March 16, 1962.

At the hearing before me on defendant's application a sharp conflict of testimony developed as to the facts concerning the discovery and seizure of the heroin sought to be suppressed, her arrest and the search of her apartment. I accept the testimony of Narcotics Agents Avant and Bowen as to what occurred and do not believe the testimony of defendant Lewis and her witness in so far as it conflicts with the testimony of the agents. I find the facts to be as follows:

Late in 1961 Agents Avant and Bowen obtained information that defendant and one Charles White were engaged in selling narcotics at the apartment occupied by defendant at 160 West 85th Street and at Arthur's Bar on 133rd Street and Eighth Avenue in Manhattan and commenced an investigation. In February of 1962 they received further information that defendant and White were expecting delivery of a large supply of heroin in early March. They then kept defendant and White under almost daily surveillance.

In the early evening of March 16, 1962 the agents had the apartment building at 160 West 85th Street under observation. Defendant occupied a four room apartment on the sixth and top floor of the building and White, from time to time, lived there also. While the lease was in the name of defendant's husband from whom she was separated, she paid the rent.

About 7:45 p. m. on the evening of that day, Avant and Bowen saw the defendant enter the apartment building. Five minutes later the agents followed her. Avant took up a position on the staircase be-

tween the 5th and 6th floors from which he could observe the hallway leading to defendant's apartment. Bowen proceeded to the roof of the building from which he could look down on the windows of the apartment which faced on a side alley and the rear yard. The agents did not have either a search or an arrest warrant.

At about 10:15 p. m. White got off the elevator on the sixth floor and approached the door of the apartment. He was carrying a cardboard carton and a paper bag. White put down the carton, took out keys and was about to put a key in the lock. At that point Avant appeared from the stairwell and approached him. White dropped the paper bag and attempted to get away. There was considerable commotion in the corridor. Avant grabbed White, pushed him against the wall and, after a scuffle, placed him under arrest and handcuffed him.

Defendant heard the disturbance in the hall and apparently had some idea of what was going on. She went to the bedroom window, leaned out, looked up and down the side alley and threw a package out of the window into the courtyard at the rear of the building.

Bowen, who was looking over the parapet on the roof, observed her do so in the light coming from the window. He immediately came down from the roof, passed Avant and White in the 6th floor corridor, went down in the elevator, retrieved the package from the courtyard and returned to the sixth floor.

In the meantime defendant opened the door of the apartment and asked what all the commotion was about. Avant identified himself, told her he had just arrested White who had been about to go into her apartment. She then asked him to come in.

As Avant was entering the apartment with White, Agent Bowen arrived from below with the black paper package which defendant had thrown into the courtyard and which he had retrieved and went into the apartment with them. In addition to defendant there were two other men and her sister there. Bowen opened the package, took from it a glassine envelope containing a white powder. The agents did a rapid field test on the powder which indicated that it was heroin. They then placed defendant under arrest and searched the apartment. No other narcotics were found.

■ Defendant, under indictment for the possession of the seized heroin, clearly has standing to make this motion to suppress, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). However, she has failed to establish grounds for suppression.

The package containing heroin was not found in defendant's apartment. She had thrown the package from the window even before she opened the door and, without demur, asked Agent Avant into her apartment. No threat of entry or search had been made by the agents before the defendant threw the package from the window. There is no suggestion in the evidence that the incident with White in the hallway was fomented by the agents for the purpose of alarming the defendant and thus gaining access to her apartment. She did so not because of any attempt or threat by the agents to search her apartment but because she had become alarmed by the disturbance in the hallway, was apprehensive of what might follow, and sought to rid herself of incriminating contraband. Then, secure in the knowledge that there were no narcotics in her apartment, she felt free to ask Agent Avant to come in, no doubt believing that if any search were made nothing could be found to involve her.

By that time, however, Agent Bowen had already recovered the package from the courtyard. The telltale glassine envelope in the recovered package containing a white powder indicated that the substance was heroin, particularly in the light of the agents' previous information and the suspicious circumstances which had just occurred. This was sufficiently confirmed by the field test which the agents conducted prior to the arrest. The agents then had ample probable cause for arresting defendant without a warrant.

The sole question here then is whether the agents obtained the information on

which they arrested the defendant—that is to say, the package containing heroin—"from a place within the protection of the Fourth Amendment." Polk v. United States, 291 F.2d 230, 232 (9 Cir. 1961). We are concerned here not with the apartment itself but with the courtyard from which Agent Bowen recovered the package, and with the roof of the building from which Agent Bowen observed the defendant throw it out of her bedroom window.

■■ Whether or not a search and seizure is unreasonable within the proscription of the Fourth Amendment must be ascertained from all of the surrounding facts and circumstances and each case must stand on its own facts. United States v. Rabinowitz, 339 U.S. 56, 65–66, 70 S.Ct. 430, 94 L.Ed. 653 (1950). The question posed is whether the officers in order to make the seizure, entered upon premises where their presence without a warrant was unreasonable and therefore constitutionally proscribed. Among factors bearing on this question are the nature and extent of the householder's interest in and the privacy of the areas into which the officers went in order to make the seizure, including proximity to the actual dwelling, whether it was within the curtilage of the occupants of the dwelling and whether it was in substance an adjunct to the domestic economy of such occupants. United States v. Minker, 312 F.2d 632 (3 Cir.), cert. den. 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963); Polk v. United States, supra, 291 F.2d at p. 232.

■ The building with which we are concerned here was a six story elevator apartment house with a substantial number of tenants. There was nothing in the record indicating that it differed from other similar buildings in New York. In the absence of anything to the contrary, it must be assumed that, as in similar buildings, the elevators, stairs and hallways were open to anyone having business with any occupant of an apartment. There is nothing to indicate that the alleyway and the courtyard which were outside the building itself was in any more preferred posture. Whatever rights defendant had in these areas was simply to use them in common with other tenants and such members of the public as had business there.

Defendant had no constitutionally protected rights of privacy in these areas which were invaded by the presence of the agents, or, indeed, by Agent Bowen's recovery from the courtyard outside the building of the package which defendant had thrown there. See Polk v. United States, 314 F.2d 837 (9 Cir.), cert. den. 375 U.S. 844, 84 S.Ct. 96, 11 L.Ed.2d 72 (1963); United States v. Minker, supra, 312 F.2d at p. 634.

■ The only remaining problem concerns the observations from the roof by Agent Bowen of the acts of defendant in throwing the package from her window. The roof of the building is in a somewhat different category from the hallway, stairs and other portions in common use by the tenants and others having business there. There is no showing here that the defendant had any rights on the roof either in common with other tenants or otherwise. Nor is there anything to show that the roof was physically barred to anyone seeking access there or that Agent Bowen had to do anything to get on the roof but walk up the stairs, open the roof door and step out. The most that defendant has shown as to the presence of Bowen on the roof is not that it was an invasion of any rights she had in that portion of the building but that it was possibly a technical trespass against the landlord. A simple trespass without more will not invalidate a subsequent seizure. Teasley v. United States, 292 F.2d 460, 464 (9 Cir. 1961); Giacona v. United States, 257 F.2d 450 (5 Cir.), cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958); Hurst v. California, 211 F.Supp. 387 (N.D.Calif.1962). See also McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Defendant's constitutional right of privacy was not violated by the presence of Agent Bowen on the roof or in the courtyard. See United States v. Walker, 190 F.2d 481 (2 Cir. 1951); United States ex

rel. Puntari v. Maroney, 220 F.Supp. 801, 806 (W.D.Penn.1963).

Moreover, Agent Bowen did not use his vantage point on the roof to peer into the windows of defendant's apartment and thus intrude on her privacy. It is quite plain from the physical facts that he could not have done so. Bowen, looking over the parapet of the roof, observed defendant only when she leaned out of the window and exposed herself to public view. It was then that he saw her throw the package into the courtyard. Thus, this is not a case where an agent, as a result of an illegal entry upon protected premises, observed conduct within a dwelling or other place where the right of privacy existed. Cf. McDonald v. United States, supra; Whitley v. United States, 99 U.S. App.D.C. 159, 237 F.2d 787 (1956); Hobson v. United States, 226 F.2d 890 (8 Cir. 1955); Brock v. United States, 223 F.2d 681 (5 Cir. 1955); Hurst v. California, supra.

Bowen did not obtain the information which led to the recovery of the package in the courtyard as a result of violation of any of defendant's constitutionally protected rights. And, as has been pointed out, the recovery itself was not in violation of such rights either.

Defendant relies heavily on Hobson v. United States, supra, in support of the position she takes here. However, the distinctions between the Hobson case and the case at bar only serve to point up the infirmities of her position.

There federal narcotics agents went to the front door of a one family house occupied by defendant and his wife for the ostensible purpose of apprehending the wife, while another agent stationed himself in the enclosed backyard of the premises. They had no warrant, though no good reason appeared why they could not have obtained one for the arrest of defendant's wife. As a result of an imminent or actual forced entry by the agents at the front door, defendant threw a package out of the window into the enclosed backyard. The agent stationed there observed what had occurred and called this information out to the agents at the front door. Without knowing the contents of the package, and either immediately after or immediately before it was thrown out of the window, the two agents at the front broke through the door and arrested the defendant.

Under these circumstances the court in the Hobson case found that the throwing of the package into the backyard could not be separated from the unlawful search and that the defendant's action in so doing was forced by the unlawful actions of the officers. Moreover, "even after the package was thrown out it remained upon protected premises." (226 F.2d p. 894.)

In contrast to the Hobson case, in the case at bar the package was not thrown from the window because of any threatened or actual actions by the officers but on defendant's own volition, defendant's conduct was not discovered as a result of observation from protected premises, and the package was not recovered from protected premises. The entry of the officers into the defendant's apartment was not unlawful but was on her own invitation, and the arrest was made only after the agents found that the package contained a glassine envelope of white powder which field tests indicated to be heroin.

The totality of circumstances shown by the evidence does not show that the agents acted unlawfully or that defendant's constitutional rights were in any way invaded.

The motion to suppress is in all respects denied.

It is so ordered.