THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARMELO DÍAZ CINTRÓN, Defendant and Appellant.

No. CR-64-128.    Decided October 30, 1964.

*Raúl Barquet Trujillo,* counsel appointed by the Supreme Court on appeal to give legal aid to defendant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Carmelo Díaz Cintrón and two other persons were charged with having in their possession and control the narcotic drug known as heroin.

The prosecution evidence established that on March 13, 1963, some special internal-revenue agents of the Treasury Department who were patrolling Santurce receive a radio-telephone call. As a result of that call they headed for Benítez Castaño Street. They arrived at the place where an unoccupied house is situated. One of the agents testified that there is an old latrine separated from the house, and "I could see through the top of the latrine where there is an opening" that defendants were inside lighting themselves with a candle, and "were preparing a cap which is used by drug addicts." They knocked at the door and he saw that one of the defendants, Torres Tapia, threw a bag behind the latrine. When he saw one of the defendants throwing the bag, one of the agents "opened the door—when he pulled it the boards fell because they were old—and then he saw them inside and as I went inside I picked up a metal cap, a dropper with a hypodermic needle . . .". They also seized the bag which they threw out behind the latrine. They found 10 decks in the bag. The result of the analysis of the substance contained in the caps seized was "hydrochloride of diacetylmorphine, or hydrochloride of heroin. One of the caps was also positive of hydrochloride of heroin, and the decks and the other two caps were positive of alkaloid of opium, which is a derivative of opium, the same substance from which heroin is derived."

At the close of the prosecution evidence, and the articles seized on defendants having been admitted in evidence with-

out objection by the defense, the attorney moved for reconsideration. He informed the court that he proposed to raise the impropriety of their admission in evidence against defendants. Thereupon he requested that a certain witness be summoned in order to show that the evidence was illegally seized.

The judge acceded to issue the summons requested, but the attorney said that he would locate the witness and produce her at the afternoon session. When the session was resumed in the afternoon the attorney advised that the witness refused to appear, but that he would produce another person in her place. Thereupon the district attorney raised the question that at that stage of the proceedings a motion for suppression of evidence did not lie. The judge sustained him.

The attorney then produced the witness as a witness for the defense and not in support of his motion for suppression of evidence. The witness testified that the same day of the trial she had been at the place where the heroin was seized. She described the latrine. She testified that it was made of blocks, that it had no bars, but that there was an opening between the roof and the wall.

██ The general rule is to the effect that the procedure to prevent that evidence unlawfully obtained be presented is by motion for suppression of the evidence filed prior to the trial. *People* v. *Nieves*, 67 P.R.R. 283 (1947). We made it clear, however, that one of the circumstances was that "where by the direct or proper cross-examination of the state's witnesses, it is made to appear, or it is otherwise admitted, that the articles which are offered in evidence were unlawfully seized. Under those circumstances, it is the duty of the trial court, upon objection, to refuse to receive them in evidence. No question of fact exists under these circumstances. The court is only called upon to rule on the admissibility of evidence upon admitted or conceded facts. It is not

required to stop in the midst of the trial and try a collateral fact."[1]

Thus, we see that the exception to the rule presupposes that the question arises from the prosecution evidence itself, and it is not proper to stop the proceedings in the criminal case in order to decide a collateral question.

■ In the instant case the illegality of the search does not appear from the direct examination or from the cross-examination of the policeman. The evidence establishes that the policemen observed when the three defendants in the latrine which is separated from an unoccupied house were handling articles normally used for injecting narcotic drugs, and they also saw when one of the defendants threw out of the latrine a paper bag upon realizing that they had been caught. Furthermore, our constitutional provision, Art. II, § 10, provides that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." In explaining the provision copied, it was said in the report of the Committee which recommended it to the full Constitutional Convention:

"The inviolability of the person extends to everything that is necessary for the development and expression thereof. The home, the furniture, the utensils, the books and papers owned by a citizen are like a continuation of his person, since they constitute the ambit in which he has been formed and maintains himself. To every man any interference, without his permission, in that private circle amounts to a violation of his personality."

■ Clearly the concept of "house" appearing in the constitutional provision is not confined to the place where his home is constituted. The protection is much broader. In *Lanza* v. *New York*, 370 U.S. 139, 143 (1962), it is said:

---

[1] Rule 234 of the Rules of Criminal Procedure of 1963 authorizes this procedure in its last paragraph.

". . . To be sure, the Court has been far from niggardly in construing the physical scope of Fourth Amendment protection. A business office is a protected area, [*Silverthorne Lumber Co.* v. *United States*, 251 U.S. 385; *Gouled* v. *United States*, 255 U.S. 298], and so may be a store. [*Amos* v. *United States*, 255 U.S. 313; *Davis* v. *United States*, 328 U.S. 582]. A hotel room, in the eyes of the Fourth Amendment, may become a person's 'house,' [*Lustig* v. *United States*, 338 U.S. 74; *United States* v. *Jeffers*, 342 U.S. 48], and so, of course, may an apartment. [*Jones* v. *United States*, 362 U.S. 257.] An automobile may not be unreasonably searched. [*Gambino* v. *United States*, 275 U.S. 310; *Carroll* v. *United States*, 267 U.S. 132; *Brinegar* v. *United States*, 338 U.S. 160; *Henry* v. *United States*, 361 U.S. 98.] Neither may an occupied taxicab. [*Rios* v. *United States*, 364 U.S. 253.] Yet, without attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room."

Indeed, no matter how broad the constitutional guarantee, it cannot be used indeed to protect the inviolability of a latrine of an unoccupied house trespassed on by three intruders. In *United States* v. *Romano*, 330 F.2d 566 (2d Cir. 1964), it was said: "The protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' does not extend to open fields or to unoccupied buildings. *Hester* v. *United States*, 265 U.S. 57." See, also, *United States* v. *Menker*, 312 F.2d 632 (1962).

The contention that defendant did not have due assistance of counsel is without merit. His attorney exhausted all remedies available for the accused's defense. He cross-examined the prosecution witness at length, and raised before the court several questions which evidently showed his knowledge of the case.

Appellant complains of the judge's attitude toward the attorney who represented him during the trial. He alleges that on a certain occasion, in addressing himself to the de-

fense attorney, he said: "Don't raise your voice to me. Be careful. You are still too young for that."

The incident arose when the attorney was cross-examining the prosecution witness and insisted on asking him a question. The judge said that the witness had already answered. Thereupon the attorney, addressing himself to the judge, evidently said in a high tone, "But don't you see that the witness is evading the answer?"

█ Apart from the fact that the attorneys, in addressing themselves to the judges who preside at the trials, should never raise their voice and "it is the duty of a lawyer to maintain toward the court a respectful attitude," Canon I of Professional Ethics, the fact is that the witness was not evading the answer, since he had plainly said that he did not know which was the demarcation of the lot where the latrine was situated.

It is well to point out that after the incident the attorney addressed himself to the court apologizing "for his abruptness, this attorney's indiscreet manner of addressing himself to the court on the occasion prior to adjournment. . . . The court will realize, as we do respectfully request at this time, that that was a moment of excitement during the cross-examination by this attorney of the witness who was testifying. I therefore respectfully beg Your Honor's forgiveness."

██ Appellant contends that the court refused to summon the prosecution witness referred to hereinabove. The purpose of summoning that witness, as stated by the defense, was to support his motion for suppression of evidence, and we have already seen that it was not proper to hear evidence other than that presented by the district attorney. And if the purpose was to produce her as a defense witness, no prejudice was caused since the attorney produced another witness who testified what the first one would have testified.

▪ Appellant alleges that the court erred in not providing for the inspection requested. Apart from the fact that the granting of an inspection rests on the discretion of the court, *People* v. *Rivera*, 77 P.R.R. 628, 636 (1954); *cf. Emanuelli* v. *Emanuelli*, 87 P.R.R. 359 (1963), the fact is that the attorney made reference in passing to an inspection and did not insist on his petition.

Appellant complains that the judge unduly interfered during the trial influencing the mind of the jury. There is nothing in the evidence to support the error assigned.

The contention that the verdict is contrary to the evidence is so frivolous that it does not merit discussion.

The trial judge did not abuse his discretion in refusing to refer appellant's case to the probation officer. He stated that "in a case of this nature the court is not going to exercise its discretion in that sense. He is not a child; he was 27 years of age at the time he was arraigned, and this is not the isolated case of the injection or of the vial of heroin but of 10 decks of heroin which were seized. The circumstances of this case prevent the judge from exercising his discretion in the sense requested." See *People* v. *Saura Gómez*, 90 P.R.R. 780 (1964).

The judgment will be affirmed.