### CALHOUN et al. v. UNITED STATES.
### No. 12387.

United States Court of Appeals Fifth Circuit.

Feb. 16, 1949.

Rehearing Denied March 15, 1949.

Wm. H. Fryer, of El Paso, Tex., and R. B. Rawlins, of Monahans, Tex., for appellants.

Henry W. Moursund, U. S. Atty., of San Antonio, Tex·, and Holvey Williams and Frank H. Hunter, Asst. U. S. Attys., both of El Paso, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The appellants were charged by indictment, in the first count, with having broken into the post office at Monahans, Texas, with the intent on the part of each of them to commit larceny therein, and, in the second count, at the same time and place, with having stolen and purloined money and property of the United States. All three of the appellants were seen by the chief of police on the night of February 18, 1948; they were driving around the town in appellant Lanham's automobile. Recognizing one of them, as he correctly thought, and being suspicious of the movements of the car, the alert officer took its tag number, and when when he went off duty at nine P.M., passed on to the night force the information about the car containing these three people. The night policemen followed the designated car, which sometimes seemed to be following them, until about eleven o'clock P.M., when the car under suspicion disappeared.

Subsequently that night, in the early morning hours of February 19, 1948, the post office at Monahans was forcibly broken into and robbed. Peace officers in the area,

and postal inspectors, were immediately notified and began an investigation of the crime, in the process of which it was determined that the car in which Calhoun had been recognized belonged to appellant Lanham, who had a criminal record. Other information led to the arrest of Russell and Lanham in the latter's automobile in front of the latter's house. Some time later, Lanham gave the officers permission to search his house, voluntarily opened the door for them, and gave them over three hundred dollars in currency, which he took from his bureau drawer. At the time of his arrest, the appellant Russell, who lived with Lanham, had something over three hundred dollars on his person. The appellant Calhoun, who lived with his cousin and had been out all the night before, on the morning of February 19, 1948, turned over to his cousin something over three hundred dollars in currency. The money taken from the post office had evidently been divided equally between the appellants. One of the bills, which had been accidentally torn and left in the post office safe over night, was identified by the clerk who tore it.

■ The convictions rest solely upon circumstantial evidence, since there were no eye-witnesses to the forcible entry, and no one saw the appellants rifling the safe in the post office; but there was substantial evidence, all of which we shall not attempt to recite, from which the jury was warranted in believing, and evidently did believe, the appellants were guilty beyond all reasonable doubt and to the exclusion of every reasonable hypothesis of their innocence. They were seen in the vicinity of the post office a few hours before the crime, evidently reconnoitering for some purpose, and the next day they had in their possession the money that had been recently stolen from the post-office safe. The heel print of the shoe worn by one of them was on the floor in front of the safe. In Lanham's house was found a roll of nickels, the paper around which was examined and found to contain the finger prints of a post-office employee who testified that he had rolled the nickels and placed them in his cash drawer in the safe on the evening of the 18th, which roll, together with the other money, was missing from his drawer after the burglary.

The tools found in Lanham's car were not introduced in evidence, but there was testimony that they included hammers and a file, which were chemically examined by an expert witness who testified that traces of paint were found on the hammers that corresponded in color, consistency, and chemical composition, with the paint on the metal boxes which were shown to have come from the post-office safe and to have been forcibly opened. The file found in Lanham's car was compared with a mark on the side of the door of the post office where the burglars had entered, and also compared with marks on the drawers removed from the safe, all of which was in evidence and examined before the jury. A postal employee had in his cash box a torn one-dollar bill before the robbery, which was missing the day after the robbery. This was the torn bill given by the appellant Calhoun to the witness Tomme.

■■ The motion to suppress the evidence obtained from the search of Lanham's house was properly overruled. Neither the two pistols nor the tools were introduced in evidence. Furthermore, Lanham voluntarily waived his constitutional right, and consented to the search. The only things that came from Lanham's house which were admitted in evidence, and which he claims as his own, were a roll of nickels, and currency amounting to over three hundred dollars. The court below found consent, and we concur in this finding. As to the appellant Calhoun, who complained that his shoes were taken from his room, the record discloses that no shoes were introduced in evidence. Moreover, it does not appear that Calhoun either owned or rented the room in question. The best that can be said of Calhoun's occupancy of this room is that he was permitted to use it whenever he happened to be there. So far as appears, he had no authority over this room when he was not personally occupying it. The owner and master of the house was the witness Tomme. The latter voluntarily gave the officers permission to search his home without a warrant, and voluntarily turned the money over to the post-office inspector.

We find no reversible error in the record, and the judgment appealed from is affirmed.