UNITED STATES of America ex rel.
Paul PUNTARI, Petitioner,

v.

James F. MARONEY, Superintendent State Correctional Institution, Pittsburgh 33, Pennsylvania, Respondent.

Civ. No. 63–362.

United States District Court
W. D. Pennsylvania.

Aug. 22, 1963.

Robert E. Walsh, Pittsburgh, Pa., for petitioner.

Louis Abromson, Asst. Dist. Atty., Pittsburgh, Pa., for respondent.

MARSH, District Judge.

The relator, Paul Puntari, 31 years old, was convicted by a jury in the Court of Oyer & Terminer of Allegheny County, Pennsylvania, on a charge of armed robbery of a Pittsburgh bank. He was sentenced to imprisonment for a term of 5 to not more than 15 years. On May 7, 1963, the relator filed in this court a petition for a writ of habeas corpus in forma pauperis; counsel was appointed to represent him at the hearing. We have secured and reviewed the transcript of the trial and all the pertinent documents and records of the Allegheny County Courts. From these records it appears that a motion for a new trial was denied by a court en banc. Relator appealed his conviction to the Pennsylvania Superior Court. The conviction was affirmed, Commonwealth v. Puntari, 198 Pa.

Super. 70, 181 A.2d 719 (1962); allocatur was refused by the Pennsylvania Supreme Court, 198 Pa.Super. XXVIII; an appeal to the United States Supreme Court was dismissed, 372 U.S. 708, 83 S.Ct. 1021, 10 L.Ed.2d 127. While the appeal to the Superior Court was pending, relator filed a petition for a writ of habeas corpus in the Court of Common Pleas of Allegheny County at No. 662 April Term, 1962, which was dismissed without a hearing; no appeal was taken to any appellate court.

From the transcript of the trial and other records it appears that on February 1, 1960, at about 11:25 A.M., a bandit, armed with a revolver containing copper-coated bullets, wearing a bandana over his face and a "pork pie" hat, robbed the Shadyside office of the Western Pennsylvania National Bank, Pittsburgh, Pennsylvania, of over $6,000.00. The next day two detectives went to the home of relator's parents in Pittsburgh. One of the officers knew Mr. and Mrs. Puntari, and Mrs. Puntari voluntarily consented to a search of their house (T., pp. 166, 251). The officers found and seized a "pork pie" hat in the dining room and six 38-caliber, copper-coated bullets in a second floor bedroom (T., pp. 163, 193). They did not have a search warrant.

Relator had been living in California. He visited his parents, arriving on Christmas Eve, 1959. He left Pittsburgh on February 1, 1960, the day of the robbery. His mother testified he left around 6:30 P.M. after supper. He did not tell his parents where he was going (T., pp. 253–254).

Exhibits 12 through 25, including the hat, the bullets, and the revolver were offered in evidence. The defendant objected to them generally, and specifically for the reason that they were not properly identified (T., pp. 232–233). There was no objection to the testimony relating to these exhibits. No contention was made that they were the fruit of an illegal search and seizure. The objections were overruled (T., pp. 232–234), although the Court refused to send the

hat, the revolver, and the bullets out with the jury (T., p. 300).[1]

The federal authorities in Pittsburgh filed a warrant charging relator with unlawful flight to avoid prosecution. Title 18 U.S.C. § 1073. Pursuant to this warrant, he was subsequently arrested in Richmond, Virginia, by the F.B.I. (T., pp. 187, 199). At the time he was arrested he had a 38-caliber revolver containing copper-coated bullets in a holster strapped to his waist with a belt. The bullets were of the same caliber and manufactured by the same company as the bullets found in the Puntari home. He was charged with illegal possession of firearms under federal law; the charge was later dismissed by the federal court in Virginia.

On or about October 29, 1960, relator was returned to Pittsburgh for trial in the State Court on an indictment for armed robbery and receiving stolen goods (T., p. 201). Attorney Carl Blanchfield was appointed to defend him at the arraignment on November 10, 1960. The case was continued twice and finally called for trial on January 10, 1961. Relator refused the services of court-appointed counsel, and his third request for continuance was denied by Judge Lewis and later by Judge Pentz, the trial judge. Relator elected to try the case himself. The Court ordered Attorney Blanchfield to remain in Court and advise and assist relator during the trial.

At the trial six employees of the victimized bank positively identified relator as the robber even though he was masked to some extent. A bystander, Manders, observed an automobile being driven in an unorthodox manner in a street adjacent to the bank at about the time of the robbery. At 11:30 A.M. this car stopped about one-half block from the bank and six feet in front of Manders, who positively identified the driver as the relator. The direct and circumstantial evidence pointing to relator's guilt was overwhelming. The jury could hardly have been expected to return a verdict other than guilty.

The trial was fairly conducted. The trial judge on his own motion several times protected relator from prejudice (T., pp. 210, 217–218, 237, 240).

Attorney Blanchfield aided relator in selecting the jury; consulted with him several times when directed by the Court and during recesses; demurred to the evidence pursuant to which the second count of receiving stolen goods was dismissed; made a motion to strike testimony, which was granted; made a motion for directed verdict of acquittal; delivered the summation to the jury on behalf of relator and secured permission from the Court to permit relator to also address the jury; and filed a motion for a new trial.

Relator cross-examined the Commonwealth's witnesses and frequently seized the opportunity thus presented to testify in his own behalf, although in defense he did not take the witness stand. From the trial record relator's cross-examination appears to have been able and comprehensive,—indeed, it was more vigorous and cunning than that of some lawyers we have had occasion to observe.

Relator was in Pittsburgh on the day of the robbery, but other than his mother who said he was in bed until 10:55 A.M., left the house at 11:20 A.M., and returned at 12:15 P.M., he had no alibi witnesses.

The trial judge ordered the Commonwealth to subpoena every witness requested by relator at the trial and this

1. The Pennsylvania Superior Court observed that Puntari argued in that Court that certain evidence used at the trial was obtained by illegal search and seizure; that he raised this question for the first time on appeal; that he did not move to suppress this evidence "nor did he object to its admission at the trial." That Court in affirming the conviction held that relator could not raise this issue, i.e., illegal search and seizure, "for the first time on appeal." 198 Pa.Super. p. 72, 181 A.2d p. 720, supra. The relator did raise the issue of illegal search and seizure in his petition for the writ to the Common Pleas Court which denied it and no appeal was taken.

was done. Every witness relator requested appeared and testified or was available to testify.

From the rambling petition, 30 pages long, the grounds upon which relator relies for relief appear to be as follows:

1. Numerous trial errors.

2. Relator was denied due process of law because he was denied counsel of his own choosing and denied the effective representation of counsel.

3. Relator was denied due process of law because the "pork pie" hat and the copper-coated bullets admitted in evidence were the fruit of an illegal search and seizure.

In our opinion the petition for the writ should be denied.[2]

█ As to ground 1, a writ of habeas corpus cannot be a substitute for appeal. "This rule must be strictly observed if orderly appellate procedure is to be maintained." Adams v. United States ex rel. McCann, 317 U.S. 269, 274, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942); United States v. Anselmi, 207 F.2d 312, 314 (3d Cir., 1953); United States v. Gallagher, 183 F.2d 342, 344 (3d Cir., 1950); United States ex rel. Schuck v. Maroney, 192 F. Supp. 335 (W.D.Pa.1961).

█ Presumptively relator assigned the alleged trial errors in his appeal to the Superior Court of Pennsylvania. Those he did not assign cannot be reviewed here. None of them appear to involve errors which denied or infringed relator's constitutional right to a fair trial. From our review of the trial record, he was not in any manner deprived of due process of law in violation of the Fourteenth Amendment. We find as a fact that the trial was not a farce or sham.

As to ground 2, we find the facts to be as follows: Relator was in the County

Jail in Pittsburgh approximately 70 days prior to his trial. During that period he had every opportunity to engage private counsel of his choice. His efforts to do so were frustrated by the lack of funds. He testified at the hearing in this court that his parents had raised $300.00 for his defense; however, his parents were not called to corroborate his testimony.

Attorney Carl Blanchfield, who was appointed by the State Court to defend relator on November 10, 1960, is a competent lawyer of long experience in the criminal courts of Allegheny County. This attorney from the time of his appointment and throughout the trial was ready and willing to defend relator as trial counsel and to advise him in all respects. He secured two continuances of the trial, i. e., on November 22, 1960 and January 4, 1961, in order to afford relator more time to obtain private counsel. He brought one attorney to the jail to interview relator; he spoke to another in his behalf. Because of his lack of money, or sufficient money, relator was unable to retain private counsel.

Attorney Blanchfield consulted with relator five or six times and corresponded with him. He conducted a personal investigation of the case. Relator did not disclose any alibi witnesses to the appointed attorney, nor did he disclose any, except his mother, to the trial judge. He did not mention any alibi witnesses to this court. The appointed attorney had prepared the case for trial and had knowledge of sufficient facts to properly represent relator.

On or about November 10th, relator rejected the proffered services of the Legal Aid Society. Not until the day of the trial did he ever disclose to the State Court that he would not accept the

2. The Commonwealth contends relator has not exhausted his state remedies. Clearly he raised the issue in ground 2 in the trial court, in the Superior Court, and his appeals from these adverse decisions to the Supreme Court of Pennsylvania and the Supreme Court of the United States were denied. It is not so clear that he exhausted his state remedies as to the issue raised in ground 3. He did not appeal from the denial by the Common Pleas Court of this petition for the writ which raised this issue. However, it appears he raised the question in the Superior Court which had the record before it. Without deciding, we shall assume that relator has exhausted his state remedies as to ground 3.

services of Blanchfield.[3] His refusal of counsel was intentional and reflected his own desire and volition.

■ We find as a fact that relator had sufficient time to obtain counsel of his choice; that the State Court did not abuse its discretion in refusing a third continuance of the trial on January 10, 1961, Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); United States ex rel. Cobb v. Cavell, 161 F. Supp. 174 (W.D.Pa.1958), aff'd 3 Cir., 258 F.2d 946; Baldwin v. United States, 260 F.2d 117 (4th Cir., 1958); that relator did not make a specific or timely motion to dismiss appointed counsel; and that he had ample opportunity to meet the case of the Commonwealth. If relator feels he did not have the benefit of counsel, he has only himself to blame. He waived his right to counsel intelligently, competently, with full understanding, and with his eyes open. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Adams v. United States ex rel. McCann, supra 317 U.S. p. 279, 63 S.Ct. pp. 241–242, 87 L.Ed. 268.

Moreover, the State Court, despite relator's statement that he did not want appointed counsel, insisted that Attorney Blanchfield remain with him and give aid and advice throughout the trial. The appointed counsel did so, and when requested by relator or the trial judge rendered the services detailed above.

■ An accused has an unquestioned right to defend himself. 28 U.S.C. § 1654. When it appears, as it did to the State Court, that relator knew what he was doing, it would have been error to force counsel not of his choice upon him. Adams v. United States ex rel. McCann, supra, 317 U.S. p. 279, 63 S. Ct. pp. 241–242, 87 L.Ed. 268; Reynolds

v. United States, 267 F.2d 235 (9th Cir., 1959).

The State Court went much further than required when it ordered appointed counsel to stand by and aid relator during the trial.

We find as a fact that appointed counsel would have conducted the trial if relator had permitted him to do so. He cannot now complain of inadequate preparation or inadequate representation. If there was any insufficiency, the fault appears to be that of the relator.

■ Relator complains that he was denied counsel of his choice. An accused without funds or sufficient funds who failed to engage counsel of choice within a 70-day period prior to trial must rely on court-appointed counsel if he desires an advocate. He does not have the right to tell the court whom to appoint,—the choice is that of the court. Wilson v. United States, 215 F.Supp. 661 (W.D. Va.1963); United States ex rel. Mitchell v. Thompson, 56 F.Supp. 683 (S.D.N.Y. 1944).

■ We conclude that relator was given a reasonable time and a fair opportunity to secure counsel of his own choice, Chandler v. Fretag, 348 U.S. 3, 10, 75 S.Ct. 1, 99 L.Ed. 4 (1954); that this right cannot be insisted upon in a manner that will obstruct a reasonably prompt trial, Releford v. United States, 288 F.2d 298, 301 (9th Cir., 1961); Lee v. United States, 98 U.S.App.D.C. 272, 235 F.2d 219, 221 (1956); and that he was not deprived of his constitutional right to have assistance of counsel at his trial.

■ As to ground 3, we do not find an illegal search and seizure in violation of the Fourth Amendment. The officers, without a search warrant, conducted the

---

3. Relator did not disclose any valid reason to the State judges or to this court for refusing to accept Attorney Blanchfield. The fact that Blanchfield lost a case is not a valid reason. Even the most experienced criminal lawyers have lost cases. Relator asserted that the adjective "ineffective" was applied to Blanchfield

by federal judges in United States ex rel. Tillery v. Cavell, 3 Cir., 294 F.2d 12, a case decided by the Court of Appeals long after relator's trial. We cannot find any such reference to Attorney Blanchfield in that opinion or in the unpublished opinions of the District Court.

search of relator's parents' home on February 2, 1960, the day after the robbery, and seized the "pork pie" hat and the copper-coated bullets which were offered in evidence at the trial. Relator did not claim that the hat and the bullets belonged to him; he asserted at the hearing in this court that the hat belonged to his brother, Joseph, who was not called as a witness at the trial or at the hearing, and that the bullets belonged to a game warden, who testified at the trial.

Relator was not living at the home of his parents at the time of the search; he had terminated his temporary visit on February 1st, the day of the robbery; he then had no possessory interest in the premises either as a guest or invitee. When he left on February 1st for Richmond, Virginia, to work for his uncle and get married, he intended to permanently abandon his parents' home and any of his possessions remaining therein. Cf. United States v. Minker, 312 F.2d 632 (3d Cir., 1962).

Moreover, his parents, the owners of the dwelling, without any hint of coercion, consented to the search. This evidence was brought out at the trial by relator's mother who he called as a witness. No contrary evidence was presented at the hearing in this court; relator's father and mother were not even asked by him to appear in his behalf.

 The immunity from unreasonable searches and seizures being personal, an accused cannot object to the searching of another's premises, particularly that of his parents, if the latter consent to the search. Von Eichelberger v. United States, 252 F.2d 184 (9th Cir., 1958); United States v. Walker, 190 F.2d 481 (2d Cir., 1951); Calhoun v. United States, 172 F.2d 457 (5th Cir., 1949), cert. denied 337 U.S. 938, 69 S.Ct. 1513, 93 L.Ed. 1743 (1949); Cutting v. United States, 169 F.2d 951 (9th Cir., 1948); United States v. El Rancho Adolphus Products, 140 F.Supp. 645, 651 (M.D.Pa.1956), aff'd United States v. Hokensee, 243 F.2d 367 (3d Cir., 1957), cert. denied 353 U.S. 976,

77 S.Ct. 1058, 1 L.Ed.2d 1136 (1957); 31 A.L.R.2d 1078 at p. 1081. Cf. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960).

 We conclude that the search of relator's parents' home with their uncoerced consent and the seizure of the hat and bullets were reasonable. Likewise, we conclude that the F.B.I. agent had a right pursuant to lawful arrest to search relator and seize the gun from his person. The admission into evidence of these articles at the trial did not violate relator's constitutional rights under the Fourteenth Amendment.

An appropriate order will be entered.