UNITED STATES of America, Appellee,

v.

**Richard Gordon HELBERG, Appellant.**

**No. 77–1466.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 31, 1977.

Decided Nov. 3, 1977.

Bruce A. Armstrong, Minneapolis, Minn., argued and on brief, for appellant.

Joseph T. Walbran, Asst. U. S. Atty., (argued), and Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief, for appellee.

Before GIBSON, Chief Judge, and HEANEY and WEBSTER, Circuit Judges.

GIBSON, Chief Judge.

Defendant Richard Helberg was convicted in a jury trial of possessing 75 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and of conspiring with James Kriz to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Helberg received two concurrent five-year sentences, to be followed by two concurrent special parole terms of three years. On appeal, Helberg contends that the District Court[1] erred in overruling his motion to suppress certain evidence and in denying his motion for judgment of acquittal.

During August 1976, federal agents in the Minneapolis, Minnesota, area were arranging a purchase of 300,000 tablets of dexedrine from James Kriz. This transaction was set up by Michael Kelly, a confidential informant, and was negotiated for the government by DEA Agent Donald Tomcik, working undercover. Despite elaborate preparation, the dexedrine purchase from Kriz was not completed. Shortly after this transaction fell through, Kriz told informant Kelly that he was anticipating delivery of one to two pounds of 87% pure cocaine. Kelly relayed this information to Agent Tomcik. Pursuant to Agent Tomcik's instruction to obtain as much further information as possible about this cocaine,

1. The Honorable Earl R. Larson, United States District Judge for the District of Minnesota.

Kelly learned from Kriz that the cocaine would be at Kriz's residence between 9:30 and 9:45 p.m. on August 25, 1976. This information was passed on to Agent Fomcik, and Kriz and his residence were placed under surveillance on the evening of August 25, 1976.

Kriz left his apartment at approximately 9:00 p.m. on August 25, and drove to the President Cafe in Minneapolis. He parked his car, walked toward the cafe, then turned and walked back to his car. While Kriz was walking toward the cafe, a car containing surveilling agents made a U-turn near the cafe. Kriz's observation of this maneuver was apparently responsible for his decision not to enter the cafe. Meanwhile, members of the surveillance team in the car had learned of the issuance of a search warrant for Kriz's residence. They detained Kriz, who informed them he had come to the cafe to meet a friend named Tim Johnson. The surveillance team, consisting of members of the Bloomington Police Department and DEA Agent John Boulger, returned with Kriz to his apartment, where the warrant was executed. Two pounds of marijuana, some phencyclidene and a ledger listing drug transactions were discovered and seized. During the search, several telephone calls were received from a person who identified himself as "Rick" and stated that he was waiting at the President Cafe for Kriz. Agent Boulger called the manager of the President Cafe and asked him to page "Rick" and to watch the person answering the page. Agent Boulger told the person who answered the page that Kriz was having car trouble and would be at the cafe in a few minutes. The implausibility of this excuse was apparent to "Rick", who stated that Kriz's car was then in the cafe parking lot.

Following this telephone conversation, three federal agents, including Agent Boulger, went to the President Cafe. The manager pointed out the person who had an-

swered the "Rick" page. After the agents had observed "Rick" making a telephone call, they approached him and asked for identification. He produced a driver's license in the name of Richard Helberg. A conversation ensued, in which, according to Agent Boulger, Helberg stated that he had been waiting for someone who had not arrived, that he had just called a cab to pick him up and that he did not own a car.[2] Agent Boulger then obtained a set of keys, including two Cadillac keys, from Helberg. According to Agent Boulger, Helberg stated that the car keys belonged to a Cadillac he had sold twelve to eighteen months before. Agent Boulger took Helberg's keys in order to ascertain whether they fit any car parked in the cafe parking lot. While Agent Boulger was looking for a car matching the keys, Helberg's cab arrived. Agent Boulger returned all but the car keys to Helberg, who was allowed to leave in the cab. Upon recommencing his survey of the parking lot, Agent Boulger found a locked 1971 gold Cadillac and discovered that Helberg's keys fit the door. He learned from Agent Tomcik that this car had been observed at the Kriz residence and that the driver, a person named Rick whose description fit Helberg, had been observed in Kriz's apartment. Agent Boulger then proceeded to have the Cadillac towed to the Federal Building in Minneapolis.

On the following day, August 26, 1976, the Bloomington police obtained a search warrant for the Cadillac from a municipal judge and conducted a search of the car. Their search, observed by Agent Boulger, led to the discovery and seizure of three ounces of cocaine, a small quantity of methamphetamine and items of identification for Richard Helberg.

On March 16, 1977, Helberg was indicted for possession of cocaine and, along with James Kriz, for conspiracy to distribute cocaine. Kriz pled guilty. Prior to trial, Helberg moved to suppress the evidence seized

---

2. At trial, Helberg denied telling the agents that he had no car. He also testified that he had driven to the cafe that evening in his girlfriend's Cadillac, which he had then lent to a friend, Olson. When Olson did not return the car, Helberg called a cab. Olson was fatally shot at some time prior to Helberg's trial and was, thus, unavailable as a witness.

during the search of the 1971 Cadillac, urging that the warrant authorizing the search was invalid. Following a hearing before a United States Magistrate, the motion to suppress was denied. On appeal, Helberg challenges this ruling and also urges that his motion for judgment of acquittal should have been granted because certain items seized from Kriz's apartment were erroneously admitted into evidence at his trial.

*Seizure and search of 1971 Cadillac*

The affidavit presented to the municipal judge by the Bloomington police in their application for a search warrant for the 1971 Cadillac suffered a serious omission. In order to protect the identity of the informant, the affiant did not mention or set forth in the affidavit the existence of the tip, central to the investigation culminating in the search of the 1971 Cadillac, that Kriz was planning to obtain cocaine on the evening of August 25, 1976. Helberg contends that the omission of this information from the affidavit deprived the issuing judge of an adequate basis for a determination of probable cause; that the resultant warrant was invalid; and that the fruits of the search should, therefore, have been suppressed.

Our disposition of this issue renders it unnecessary for us to determine whether or not the search warrant was invalid. Even assuming the warrant to have been invalid, we agree with the United States magistrate who ruled the motion to suppress that the seizure and search of the 1971 Cadillac were based upon probable cause and fell within an exception to the warrant requirement. Therefore, the District Court did not err in allowing items seized from the car to be admitted into evidence at trial.

■ In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Supreme Court has insisted upon probable cause as a minimum requirement for a reasonable search. The Court has also generally required that a search be preceded by the judgment of a magistrate on the probable cause issue and by the issuance of a warrant. *Chambers v.*

*Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). During the last 50 years, however, an exception to the warrant requirement has developed around automobiles. This exception is now understood to be based on two distinct vehicular characteristics: mobility, which may create exigent circumstances rendering a warrant impractical, and the diminished expectation of privacy associated with the automobile. *United States v. Chadwick,* 433 U.S. 1, 11, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cardwell v. Lewis,* 417 U.S. 583, 589–91, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

■ Nevertheless, "[a]utomobile or no automobile, there must be probable cause for the search." *Almeida-Sanchez v. United States,* 413 U.S. 266, 269, 93 S.Ct. 2535, 2537–38, 37 L.Ed.2d 596 (1973). A review of the record convinces us that the seizure and search of the 1971 Cadillac were supported by probable cause. Agent Boulger was responsible for the seizure of the 1971 Cadillac, and he oversaw its search in the parking lot of the Federal Building. Prior to the seizure and search of the car, he was aware of the tip about Kriz's planned acquisition of a large quantity of cocaine on the evening of August 25, 1976. He knew that a "Rick", who turned out to be Helberg, was waiting for Kriz at the President Cafe on the night and at the time Kriz was to obtain the cocaine. He learned from Agent Tomcik that a man fitting Helberg's description, who drove a gold 1971 Cadillac similar to the one in the parking lot, had been at Kriz's apartment, where drugs were in the open, on the two previous evenings. He also knew that Kriz had acted somewhat furtively on approaching the cafe. Finally, he was aware that his story about Kriz's car trouble had been questioned by Helberg, who was thereby forewarned that something was amiss. Thus, Helberg had a reason to deny ownership of a car containing drugs and to fabricate a story in support of his denial. Then, despite Helberg's disclaimer of car ownership, Agent Boulger found a car in the cafe parking lot which

matched the keys he had obtained from Helberg. We conclude that Boulger had probable cause to believe that the 1971 Cadillac would contain evidence of a contemplated drug transaction between Helberg and Kriz.

Given the existence of probable cause, no warrant was required for the search of the 1971 Cadillac if that search fell within an exception to the warrant requirement.[3] Helberg's continued freedom on the evening of August 25, 1976, created a likelihood that the 1971 Cadillac and its contents could be removed. Considering this exigency against the diminished expectation of privacy associated with the automobile, a warrantless search of the car would have been proper at the cafe parking lot. Accordingly, the towing and deferred search of the car were appropriate.

> For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause, either course is reasonable under the Fourth Amendment.

*Chambers v. Maroney, supra,* 399 U.S. at 52, 90 S.Ct. at 1981.

### Items seized from Kriz's apartment

The circumstances surrounding the search of Kriz's apartment have been previously discussed. Over Helberg's objection, certain items seized during that search were admitted into evidence at Helberg's trial, on the testimony of Officer Feyereisen of the Bloomington Police Department. Helberg contends that the admission of these items, particularly Kriz's ledger of drug transactions, constituted error.

■ Helberg argues that Feyereisen lacked personal knowledge of the search and was not, therefore, qualified to testify about the items seized. Feyereisen was not the inventorying officer at the search of Kriz's apartment, but he was present throughout the search and during the transportation of the seized items back to the police station. The record contains ample evidence showing that Feyereisen was closely involved in the search and that he possessed sufficient personal knowledge to testify on the subject.

■ Helberg also contends that the ledger of Kriz's drug transactions was inadequately authenticated under Fed.R.Evid. 901. This ledger contained notations naming a number of people, including a "Ricky", who had Helberg's mother's telephone number. Three other drug customers listed in the ledger gave testimony identifying the ledger as that in which Kriz recorded drug transactions. Their testimony, along with that of Feyereisen, was sufficient to provide a prima facie showing of the authenticity of the ledger, which Helberg did not counter. *United States v. Wilson,* 532 F.2d 641, 644–45 (8th Cir. 1976), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1977). Accordingly, we conclude that Kriz's drug sales ledger was properly admitted into evidence at Helberg's trial.

Affirmed.

---

3. Our assumption that the state search warrant was invalid does not require us to pretermit analysis of other possible legitimating bases for the search. There was probable cause to search the 1971 Cadillac, which a subsequently occurring condition, such as the issuance of a possibly invalid warrant, could not erase. Thus, we may ascertain whether the search fell within an exception to the warrant requirement. *See Coolidge v. New Hampshire,* 403 U.S. 443, 455–73, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *cf. United States v. Clark,* 559 F.2d 420, 22 Crim.L.Rep. (BNA) 2042, 2043–44 (5th Cir. 1977); *United States v. Darrow,* 499 F.2d 64, 68–69 (7th Cir.) *cert. denied,* 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974).