UNITED STATES of America, Appellee,

v.

Terrance Karl ALDEN, Appellant.

No. 77–1882.

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1978.

Decided May 23, 1978.

---

Michael B. Stern, St. Louis, Mo., argued, made rebuttal and filed briefs, for appellant.

Robert D. Kingsland, U. S. Atty., and David W. Harlan (argued) Asst. U. S. Atty., St. Louis, Mo., on brief for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and MacLAUGHLIN,* District Judge.

MATTHES, Senior Circuit Judge.

Terrance Karl Alden was indicted, tried by a jury, and convicted on five counts of armed bank robbery.[1] He was sentenced to a term of twenty-five years imprisonment on each count, with the sentences to run consecutively. On appeal, Alden contends that the district court erred (1) by not suppressing items of evidence seized in a warrantless automobile search; (2) by not suppressing items of evidence seized in a warrantless search of a trash pile near appellant's residence; and (3) by not suppressing evidence of line-up identifications of appellant. Appellant further contends that the jury's verdict was fatally inconsistent. We reject appellant's contentions and affirm the judgment of conviction.

■ Appellant did not directly or implicitly in his opening brief challenge the sufficiency of the evidence to warrant submission of the case to the jury. In his reply brief, however, appellant obliquely suggests for the first time that the evidence was not of sufficient reliability to rise to the level of a submissible case. Notwithstanding appellant's failure to appropriately present this issue, we have, with painstaking care, reviewed the full record and hold that the direct and circumstantial evidence unerringly pointed to appellant's guilt on all of the counts, and the jury could and manifestly did reach that conclusion.

I

The notorious series of St. Louis-area bank robberies of which appellant stands convicted were marked by rather extraordinary feats of strength and agility. Wielding a sawed-off shotgun, the robber would customarily vault over the tellers' counter to effect both the theft and his escape. On one occasion, the robber was shot[2] in the

---

* The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota, sitting by designation.

1. The robberies occurred at the following institutions: Gravois Home Savings & Loan, December 16, 1976 (Count I); St. Louis County Federal Savings & Loan, December 28, 1976 (Count II); Citizens Bank of Pacific, January 8, 1977 (Count III); County Bank of Chesterfield, April 20, 1977 (Count IV); and Boatmens Bank of Concord Village, May 27, 1977 (Count V). Each of the institutions was insured by either the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation.

2. The shooting occurred on May 27, 1977. On May 28, 1977, appellant flew to Las Vegas and then drove to the Mojave Valley Hospital Outpatient Clinic in Bull Head City, Arizona. From there he was referred to the Sun Rise Hospital in Las Vegas where an operation revealed a bullet lodged in appellant's left side.

left side at close range by an off-duty policeman, but completed the hold-up apparently unhindered. As a result of such exploits, the local media dubbed the robber "the Athletic Bandit" and "the Bionic Bandit." The robberies received extensive news coverage and were investigated intensively by the police and the F.B.I.

The diligence of the authorities was ultimately rewarded. Acting on an informant's tip, Detectives Patricia Rice and George Venegoni of the St. Louis Police Department ran a check on two suspects: John Givens and Robert Taylor. While surveilling Givens' residence, the detectives saw appellant, accompanied by Givens, drive up in a Buick registered to Lonnie Lee Taylor, Robert Taylor's wife. Both detectives immediately recognized appellant from witness' descriptions, composite drawings, and bank surveillance photographs, as the bank robber. After parking the Buick in front of Givens' house, appellant furtively took a handgun from the trunk and gave it to Givens. The two then drove off in Givens' Chrysler. After tailing the Chrysler through a circuitous series of right turns, the detectives pulled it over for various license violations and to investigate the handgun and appellant's identity.

Detective Rice approached Givens who apparently began to reach for a gun hidden in a leather pouch he was carrying. She disarmed him, however, and placed him under arrest.

Detective Venegoni approached appellant and asked for identification. Appellant produced an Arizona driver's license issued in the name of Robert Taylor, but bearing a picture of appellant. Venegoni knew the document was false. As a patrol car arrived at the scene, appellant broke and ran, drawing a .44 magnum revolver. Newspaper accounts appended to appellant's reply brief indicate that appellant vaulted over a

car and a fence in attempting to escape. He was pursued for several blocks before being captured and disarmed.[3]

After booking appellant at the police station, Detective Venegoni, aware that appellant had made a post-arrest phone call, returned to the Buick parked on the street in front of Givens' residence, conducted a standard search of the vehicle, and had it impounded. Appellant complains that the district court should have suppressed the evidence obtained from the search of the Buick. We hold that the district court properly admitted the evidence.

■ As the Supreme Court has recently noted, the "fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances." *United States v. Chadwick,* 433 U.S. 1, 9, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). That inquiry is necessarily satisfied when a search or seizure is predicated on the issuance of a warrant based on probable cause by a neutral and detached magistrate. *See Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Helberg,* 565 F.2d 993, 996 (8th Cir. 1977). "But [the Supreme Court] has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." *United States v. Chadwick, supra,* 433 U.S. at 12, 97 S.Ct. at 2484. This distinction regarding automobiles is based partly on vehicular mobility, which may create exigencies making a warrant impracticable, and partly on the diminished expectation of privacy associated with the automobile. *Id; United States v. Young,* 567 F.2d 799, 802 (8th Cir. 1977); *United States v. Helberg, supra.* In certain circumstanc-

Appellant had told the treating physician at the Clinic that he had been hit by a ricochet during target practice in the desert. The physician testified that the wound could not have been caused in that manner.

**3.** Appellant asserts that he fled from the police because he was subject to an outstanding "Or-

der for Arrest of Escaped Prisoner" issued by state authorities in New Jersey. At the time of his escape, appellant had been serving two life sentences for the murder of an armored car guard during a robbery in Middletown, New Jersey.

es, the automobile distinction may even justify searches not founded on probable cause. *South Dakota v. Opperman*, 428 U.S. 364, 370 n.5, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (inventory search).

On the instant facts, it is clear that Detective Venegoni's search of the Buick was reasonable and must be upheld. Given the information he possessed: the informant's tip, the observation of appellant driving the Buick, the recognition of appellant as the bank robber, the observation of the surreptitious gun transfer, appellant's impersonation of the spouse of the Buick's owner, and appellant's armed attempt at escape, Detective Venegoni had probable cause to believe that the Buick contained both weapons and evidence relating to the bank robberies. *See United States v. Young, supra; United States v. Kelly,* 547 F.2d 82, 84 n.4 (8th Cir. 1977); *United States v. Pheaster,* 544 F.2d 353, 373 (9th Cir. 1976). In addition, exigent circumstances dictated that a search of the vehicle be conducted as swiftly as possible. The Buick was parked on a public street in front of the residence of a suspected accomplice of appellant. Appellant was using a driver's license belonging to another suspect, Robert Taylor, and was driving a car registered to Taylor's wife. Moreover, Detective Venegoni knew that appellant had made a phone call after being taken to the police station. Thus, Venegoni could reasonably conclude that appellant had accomplices at large who might remove the Buick or destroy whatever evidence it contained. *See United States v. Collins,* 549 F.2d 557, 560 (8th Cir.), *cert. denied,* 431 U.S. 940, 97 S.Ct. 2656, 53 L.Ed.2d 259 (1977); *United States v. Pheaster, supra* at 374.

■ We hold that Detective Venegoni's warrantless search of the Buick was based on probable cause and necessitated by exigent circumstances. It was, therefore, a reasonable search and did not infringe on appellant's Fourth Amendment rights.

The government contends that the Buick search can also be sustained as an inventory search of a car subject to impoundment. *See South Dakota v. Opperman, supra,* 428

U.S. at 375–76, 96 S.Ct. 3092; *Cady v. Dombrowski,* 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Because we sustain the search of the Buick on other grounds, we need not reach that issue.

## II

Shortly after appellant's arrest, F.B.I. agents and various local law enforcement officers went to appellant's Leasburg, Missouri, residence in an attempt to locate and interview Lonnie Lee Taylor. The house was surrounded as a precaution against armed resistance from possible accomplices of appellant. A Missouri highway patrolman, positioned near a pile of partially burned trash, noticed a piece of cardboard listing radio scanner channels which he brought to the attention of the F.B.I. agents. The cardboard, several pieces of paper, a pocket watch, and a medical arm band were subsequently seized from the trash pile without a warrant. Some of these items were introduced into evidence over appellant's objection.

Appellant contends that the district court erroneously declined to suppress the evidence taken from the trash pile. The government argues that the seizure of the evidence was justified under either of two theories: that the items were abandoned and that the items were in plain view. We need only discuss the first of these arguments.

The trash pile was apparently within the curtilage of appellant's residence. The U. S. Magistrate who heard evidence on appellant's motions to suppress found that the government had sustained its burden of showing by clear and unequivocal evidence that appellant had abandoned the items in the trash pile. As a result, the Magistrate concluded that appellant was without standing to assert the protections of the Fourth Amendment with respect to the *bona vacantia* found in the trash pile. *See generally Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); *Friedman v. United States,* 347 F.2d 697, 704–06 (8th Cir.), *cert. denied,* 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965). The

district court adopted the findings and conclusions of the U. S. Magistrate.

■ "Abandonment is an ultimate fact . . . based generally upon a combination of action and intent." *Id.* Consequently, the district court's finding regarding abandonment will not be overturned on appeal unless clearly erroneous. *See Magda v. Benson,* 536 F.2d 111, 112 (6th Cir. 1976); *Friedman v. United States, supra.*[4] In the present case, the testimony of Lonnie Lee Taylor, who resided with appellant in Leasburg, indicated that the items seized had been placed in the trash pile for burning or other disposal. There was no evidence that appellant intended to retain anything in the trash pile. On these facts, we cannot say that the district court's finding of abandonment was clearly erroneous. *See Magda v. Benson, supra; Argo v. United States,* 378 F.2d 301, 303 (9th Cir. 1967), *cert. denied,* 390 U.S. 907, 88 S.Ct. 823, 19 L.Ed.2d 874 (1968).

■ The district court's conclusion that appellant's abandonment of the items in the trash pile deprived him of standing to challenge the introduction of those items into evidence has clear case support. *See United States v. Moody,* 485 F.2d 531, 533–34 (3d Cir. 1973); *United States v. Minker,* 312 F.2d 632, 634–35 (3d Cir. 1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 978 (1963); *cf. United States v. Moone,* 558 F.2d 1038, (9th Cir. 1977) (denial of standing upheld since trash knowingly exposed to public not covered by Fourth Amendment). Because no one owns or possesses abandoned property, no one can claim a Fourth Amendment interest in it. *See* Knox, *Some Thoughts on the Scope of the Fourth Amendment and Standing to Challenge Searches and Seizures,* 40 Mo.L.R. 1, 23 n.157 (1975); *see generally Abel v. United States, supra,* 362 U.S. at 241, 80 S.Ct. 683; *Hester v. United States,* 265 U.S. 57, 58–59, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

■ Appellant argues that he has standing to challenge the introduction of the items seized from the trash pile, regardless of their abandoned nature, because they were found in a warrantless search of an area immediately adjacent to his residence. But even assuming appellant does have standing, the question of whether or not the conduct of the authorities violated appellant's reasonable expectations of privacy would remain. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Shelby,* 573 F.2d 971 (7th Cir. 1978). The very notion of abandonment, however, implies a renunciation of any reasonable expectation of privacy. *United States v. Mustone,* 469 F.2d 970, 972 (1st Cir. 1972); *see Magda v. Benson, supra* at 112–13. More importantly, no one could reasonably expect that partially burned trash dumped in an open area of yard and exposed to the wind would remain secure. Too many possibilities for public exposure exist in such circumstances for this court to find a privacy interest protected by the Fourth Amendment. *See, e. g., United States v. Shelby, supra,* at 974 n.3. Since the authorities were properly in the area for security reasons, we hold that the seizure of items from the trash pile did not violate appellant's Fourth Amendment rights.

### III

■ The day after appellant's arrest, he participated in a line-up during which he was positively identified by witnesses from several of the robberies. Appellant contends that the line-up was unnecessarily suggestive and that the identifications should have been suppressed. We disagree.

■ A criminal conviction is unfairly wrought if based on identification evidence resulting from a pretrial confrontation which is so impermissibly suggestive as to create a very substantial likelihood of misidentification. *Manson v. Brathwaite,* 432

---

4. As we stated recently in *United States v. Johnson,* 570 F.2d 836, 838 (8th Cir. 1978): "It is firmly settled that factual findings made by the trial court in a criminal case must stand unless clearly erroneous, at least where such findings concern matters other than the ultimate question of guilt."

U.S. 98, 113–16, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 198–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The determination of whether identification evidence should be suppressed must be based on all the circumstances and should focus on (1) the degree to which the pretrial confrontation was suggestive, (2) any exigencies justifying the suggestive procedure, and (3) the reliability of the identification. *Israel v. Odom,* 521 F.2d 1370, 1373 (7th Cir. 1975); *United States ex rel. v. Sturges,* 510 F.2d 397, 402–03 (7th Cir.), *cert. denied,* 421 U.S. 1016, 95 S.Ct. 2424, 44 L.Ed.2d 685 (1975) (opinion by then Judge, now Mr. Justice, Stevens); *see Manson v. Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. 2243, 2253. The Supreme Court has emphasized, however, that the first two factors are merely a threshold. *See Neil v. Biggers, supra,* 409 U.S. at 198, 93 S.Ct. 375. Unnecessarily suggestive pretrial confrontation procedures, standing alone, do not violate due process. *Id.* "[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ." *Manson v. Brathwaite, supra.*

The line-up in the present case included five employees of the police department, dressed in civilian clothes, and appellant. Appellant complains that he appeared distinctly more unkempt than the other line-up subjects because he was not allowed to wash, shave, change clothes, or comb his hair prior to the line-up. But the U. S. Magistrate who conducted the suppression hearing,[5] and who had arraigned appellant just after the line-up, found appellant similar in height, weight and general appearance to the other line-up subjects. The district court adopted the Magistrate's finding and, after reviewing photographs of the line-up and the relevant evidence, we cannot characterize that finding as clearly erroneous.

Appellant argues that the line-up was suggestive because he was the only participant with *very* curly hair. Although appellant's hair was somewhat more curly than that of the other line-up subjects, only one witness mentioned appellant's hair as a factor in her identification. In addition, the evidence indicated that appellant committed the robberies while wearing either a stocking cap or ski mask. At two of the robberies, appellant also wore a wig. Thus, it would seem that the U. S. Magistrate and the district court correctly concluded that the line-up was not unnecessarily suggestive. Moreover, suggestiveness in the line-up is not fatal since it is clear that the reliability of the out-of-court identifications easily outweighed any "corrupting effect" the line-up procedure might have exerted. *See Manson v. Brathwaite, supra.* The factors to be considered in determining the reliability of identification evidence "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.; Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. 375.

Each of the witnesses who identified appellant at the line-up had a substantial opportunity to view the robber at the time of the particular crime. Indeed, most of the witnesses saw the robber at very close range for several minutes in well-lit banking facilities. All of the witnesses appeared to have been attentive to the robber during the hold-ups and their descriptions of him prior to the line-up were largely accurate. More importantly, even though the time between the robberies and the line-up was between two and nine months, each witness expressed a high degree of certainty that appellant was the robber. The evidence supports the conclusion of the U. S. Magistrate, adopted by the district court, that the identification evidence was reliable. Consequently, we hold that the district court did

---

5. The authorities made an effort to recruit line-up subjects who fit appellant's general description. Care was taken to make certain that the witnesses did not communicate with one another during the line-up. Additionally, appellant's appointed counsel was present throughout the line-up procedure.

not err in admitting the testimony regarding the line-up identifications of appellant.[6]

## IV

Despite the fact that appellant never sought a severance with respect to any charge in the indictment, he now contends that various conflicts in the eye-witness testimony demonstrate that the jury reached a verdict which was fatally inconsistent. This claim is wholly without merit. As appellant concedes, inconsistencies in a verdict on separate counts of an indictment do not require reversal of a conviction. *Canady v. United States,* 354 F.2d 849, 855–56 (8th Cir. 1966). Moreover, the conflicts in testimony on which appellant relies are remarkably slight in a trial so replete with eye-witness testimony.

We have carefully reviewed the exhaustive record in this case and find ample evidence to support appellant's conviction on all counts.[7] No error affecting appellant's substantial rights appears. Accordingly, we affirm.

---

**6.** Since we uphold the admission of the out-of-court confrontation identifications of appellant, *a fortiori,* appellant's challenge to the in-court identifications by the various line-up witnesses must fail. *See Neil v. Biggers, supra* at 198; *see also Manson v. Brathwaite, supra; Pruitt v. Hutto,* 574 F.2d 956 (8th Cir. 1978).

**7.** In addition to eye-witness testimony, the circumstantial evidence of appellant's guilt was very strong. The robberies were linked by a number of common characteristics. The robber always wore a stocking cap or ski mask and brandished a sawed-off shotgun. In the first, third, and fourth robberies, the shotgun was initially hidden in a Venture department store bag. In each hold-up but the first, the robber vaulted the tellers' counter and put the money he took in a pillowcase. The robber always made his get away in a recently stolen Ford vehicle which he would abandon a short distance away.

Telltale pieces of evidence left behind in each robbery were subsequently linked to certain items seized in a warrant search of appellant's residence. Evidence seized in other searches also proved very incriminating or else led to incriminating testimony. Appellant's only defense was an attempt to refute government evidence regarding appellant's spending habits. In sum, the thoroughness of the investigating authorities resulted in a virtually airtight case against appellant.