UNITED STATES of America, Appellee,

v.

Jerry Lee WILSON, Appellant.

Norman Karl SCOTT, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 80–1985, 80–1986.

United States Court of Appeals,
Eighth Circuit.

Submitted May 20, 1981.

Decided Dec. 4, 1981.

Rehearing Denied Feb. 26, 1982.

---

Raymond C. Conrad, Jr., Federal Public Defender, W. D. Missouri, for appellants in both cases. Philip M. Moomaw, argued, Asst. Federal Public Defender, Springfield, Mo., for appellant in No. 80–1985.

Gregory K. Johnson, argued, Asst. Federal Public Defender, Springfield, Mo., for appellant in No. 80–1986.

J. Whitfield Moody, U. S. Atty., Michael A. Jones, argued, Asst. U. S. Atty., Springfield, Mo., for plaintiff-appellee in both cases.

Before HEANEY, BRIGHT, and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Norman Karl Scott and Jerry Lee Wilson appeal their convictions for first degree murder, 18 U.S.C. §§ 1111, 2 (1976), and conspiracy to murder, 18 U.S.C. § 1117 (1976). Both received concurrent life sentences after a jury convicted them in a joint trial of killing James Frederick Tandy while all were inmates at the Medical Center for Federal Prisoners in Springfield, Missouri (MCFP).

In this appeal both contend that the district court[1] erred by (1) failing to grant discovery of inmate witnesses' Bureau of Prison and parole files, (2) limiting inquiry into favorable treatment afforded two inmate prosecution witnesses, (3) denying mistrials because of government intimidation of inmate defense witnesses at the prison, and prosecutorial misconduct at trial, (4) failing to make findings concerning the existence of a conspiracy at the close of the Government's case, and (5) sending all trial exhibits to the jury after commencement of deliberations without also sending a transcript containing exculpatory testimony. Scott separately contends that the district court mistakenly permitted the Government to introduce hearsay testimony to rebut the charges of inmate intimidation. Wilson separately contends that the district court should have granted his motion for judgment of acquittal because the evidence was insufficient to sustain his convictions.[2]

For the reasons set out below, we affirm Scott's conviction. Because we are unable to find sufficient evidence to support either of Wilson's convictions, we reverse those convictions.[3]

1. The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

2. We take Wilson's sufficiency challenge to apply to both his first degree murder and conspiracy convictions. See text accompanying note 6 infra.

3. Because we reverse Wilson's convictions for insufficient evidence, we address those arguments advanced by both appellants only insofar as they affect appellant Scott.

## I. *Background.*

The Government initially indicted Wilson, Scott, and Alvin Freeman for murder and conspiracy to murder Tandy on December 14, 1979, alleging that they set fire to Tandy and his quarters at the MCFP.

Apparently Scott became angry upon discovering that a poncho he made at the prison was missing. Scott suspected that Tandy was the thief. He vowed to kill Tandy if his suspicions were confirmed. At one point Scott obtained a knife from another inmate, but he later returned it saying that he had something better. Both Wilson and Freeman helped Scott squeeze alcohol from alcohol pads commonly available at the MCFP and also helped cut the heads from a box of matches. Early the following morning, Scott ignited the mixture and poured it over Tandy as he slept in his cell. Tandy later died from the burns, which covered sixty percent of his body.

The Government subsequently dismissed the indictment against Freeman in return for his testimony against Wilson and Scott, and a future guilty plea to the reduced charge of misprision of a felony. *See* 18 U.S.C. § 4 (1976).[4]

## II. *Discussion.*

### A. *Discovery.*

■ Scott asserts that the trial court committed prejudicial error in denying him access to files maintained by the Bureau of Prisons and the United States Parole Commission on three inmates—Alvin Freeman, Robert Guess, and Michael Montgomery—who testified against him and Wilson at trial. Because all three had initially denied knowledge of the events surrounding Tandy's death, Scott contends that the Government extended favorable treatment to the

witnesses to induce their change of testimony. Scott seeks access to the files for information that would verify his allegations of preferential treatment or that would otherwise erode the inmates' credibility as witnesses.[5] Our review of the disputed materials indicates that they did not contain any exculpatory material or information that could be useful for impeachment purposes. Further, the record contains no indication that the Government extended any undisclosed preferential treatment. While the United States Attorney did recommend probation at Freeman's sentencing hearing, there is no support for appellants' claim that this recommendation was part of the plea agreement, known to Freeman but undisclosed to the appellants at trial. There is, likewise, no indication that Guess received preferential treatment.

### B. *Limiting Cross-Examination.*

■ We similarly reject Scott's contention that the district court erred in limiting cross-examination concerning favorable treatment afforded Freeman and Guess. Scott argues that the court should have allowed counsel to question Guess about his release to a halfway house before parole, and Freeman concerning his release without bond pending trial.

As indicated above, the materials do not reveal that either Freeman or Guess received favorable treatment beyond that disclosed by the United States Attorney. In this case, the court permitted counsel to cross-examine each witness regarding prior convictions, inconsistent statements, and favorable treatment. The district court did not abuse its discretion in limiting cross-examination as it did. *See United States v. Kelley,* 545 F.2d 619, 623 (8th Cir. 1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1555, 51

---

**4.** Section 4 prohibits concealing or a wilful delay in reporting knowledge of the actual commission of a felony. *See* 18 U.S.C. § 4 (1976).

**5.** This court previously considered these contentions and remanded the issue to the district court so that appellants' attorneys could examine portions of the files to determine whether the failure to disclose the materials prejudiced appellants' defense. *See United States v. Wil-*

*son,* No. 80–1985 (8th Cir. June 19, 1981)(order of limited remand). The district court refused to require disclosure of a number of the documents stating that they contained nothing relevant to any issue in the case and that release would abridge prison security. After appellants objected to the district court's action, we reviewed the disputed documents.

·L.Ed.2d 777 (1977); *United States v. Skillman*, 442 F.2d 542, 551–52 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971).

### C. *Mistrial Motions.*

Scott asserts as error the district court's denial of two motions for mistrial.

Scott argues that the district court should have granted a mistrial because Government agents allegedly intimidated defense witnesses Ronald Benjamin and John Scott at the MCFP before trial. Scott contends that this conduct affected these witnesses' ability to give favorable testimony.

 The record does not support this contention. After a hearing, Judge Clark weighed the testimony of the witnesses and the FBI agents before denying the motion for mistrial. The record amply supports the court's finding that the FBI did not intimidate the inmate witnesses. This court will not disturb the court's conclusions concerning the credibility of those testifying absent clear error. *See United States v. Johnson*, 570 F.2d 836, 838 (8th Cir. 1978); *United States v. Alden*, 576 F.2d 772, 777 (8th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978); *Mullins v. United States*, 487 F.2d 581, 589 (8th Cir. 1973).

 Scott also contends that the court should have ordered a mistrial after the Government questioned an inmate witness, John Scott, about a note allegedly written by Norman Scott. No such note existed. After a bench conference in which it became clear that the United States Attorney had confused John Scott with another inmate, the judge promptly instructed the jury to disregard the question. In the absence of any evidence of intentional prosecutorial misconduct, the district court properly denied Scott's motion for a mistrial.

### D. *Existence of Conspiracy.*

 Scott argues that the district court erred in refusing to make findings concerning the existence of a conspiracy at the close of the Government's case. *See United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978).

To make a proper ruling on his motion for judgment of acquittal, he contends that the district court first must rule on the admissibility of the coconspirator's statements. The *Bell* findings are to be made at the close of all evidence. *Id.* at 1044. The motion for judgment of acquittal calls for the trial judge to determine whether the evidence presented by the prosecution is sufficient to warrant submission of the case to the jury.

 Scott's contention is without merit. Both Michael Montgomery and Robert Guess testified that Scott vowed to kill Tandy for the theft. This testimony was admissible under rule 801(d)(2)(A) because the statements were offered against Scott, and involved Scott's own statements. Freeman testified that he helped Scott and Wilson prepare the mixture of alcohol and matchheads ultimately used to set Tandy on fire. Guess testified that he saw Scott pour a burning mixture into Tandy's cubicle just before Tandy screamed and ran flaming down the corridor. The record presents adequate evidence to warrant submission of the case to the jury even without the admission of other testimony containing coconspirator's statements. The district court properly denied Scott's motion for judgment of acquittal.

### E. *Trial Exhibits.*

Scott contends that the court should not have sent to the jury the trial exhibits showing that Tandy died of severe burns as a result of a fire bomb, because submission of these exhibits without a transcript of the exculpatory testimony adduced by the defense improperly emphasized the prosecution's case.

 We find no merit in this contention. The district court followed the proper procedure in transmitting the exhibits, allowing all parties to agree that they were complete. *See United States v. Bishop*, 492 F.2d 1361, 1365 n.5 (8th Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 59, 42 L.Ed.2d 59 (1974). The trial court has considerable discretion in deciding whether to send exhibits

to the jury. *See United States v. Parker*, 491 F.2d 517, 521 (8th Cir. 1973), *cert. denied*, 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). We find no abuse here.

### F. *Hearsay.*

 Scott finally argues that the court erred in admitting the testimony of Lt. Roy Gay concerning alleged FBI intimidation of inmate witness Benjamin during an interview before trial at the MCFP. Lt. Gay, a MCFP officer, was present at the interview and testified that he had heard no intimidating statements. Scott's argument is frivolous; inasmuch as Gay's testimony did not recount an out-of-court statement, it could not be hearsay. Lt. Gay's testimony covering the FBI questions asked of Benjamin is not hearsay because the remarks were not offered to prove the truth of the matter asserted. *See* Fed.R.Evid. 801(c).

### G. *Insufficient Evidence.*

[11] Wilson argues that the evidence is insufficient to convict him of conspiracy to murder Tandy because the Government failed to prove that he had knowledge of the conspiracy and its intended objective. Although this challenge focuses on the conspiracy conviction, it amounts to an attack on his first degree murder conviction because both require Wilson's intention to participate in Tandy's murder.[6] The validity of Wilson's convictions, therefore, rests on whether the Government proved that Wilson knew before the occurrence that the objective of his actions in aiding Scott was Tandy's murder.

 The record indicates that the Government did not sustain its burden. Viewing the evidence in the light most favorable to the Government, *see Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942), evidence that Wilson knew that Scott intended to kill Tandy is insufficient to sustain Wilson's convictions.

While Freeman's testimony shows that Wilson helped to make the mixture ultimately used by Scott to set Tandy afire, there is no evidence that Wilson knew beforehand of Scott's intention to kill Tandy. Montgomery, who overheard a conversation between Wilson and Scott concerning other prison burnings, stated that he never heard them talk about killing Tandy. Wilson's statements to Freeman and Montgomery after Tandy's death indicating that Wilson knew how Tandy had been burned show only that Wilson knew what happened, not that he planned to kill Tandy with Scott and took action to that end.

Freeman also testified that, while in the bathroom, he saw Wilson in the hallway looking up and down the corridor a few moments before the burning. On cross-examination Freeman admitted that he did not know whether Wilson returned to his cell by the time the incident took place. At best, therefore, Freeman's testimony only puts Wilson in the corridor at about the time of the murder. Another prosecution witness, Robert Guess testified that he heard somebody return to the cell before the burning occurred but assumed it was Freeman. Because Freeman was in the commode, however, it could only have been Wilson. The evidence must do more than merely raise suspicion or possibility of guilt. *United States v. Jones*, 545 F.2d 1112, 1115–16 (8th Cir. 1976), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). This evidence is simply too tenuous to support Wilson's conviction; Wilson could just have easily been going to get ice from the ice machine located in front of the bathroom when he heard some noise that made him look around.

Finally, the Government introduced an envelope found under Scott's mattress that contained matchheads as well as the thumb-

---

**6.** A conviction as aider and abettor, 18 U.S.C. § 2 (1976), requires the same intent as a conviction for first degree murder under 18 U.S.C. § 1111 (1976). *See United States v. Burkhalter*, 583 F.2d 389, 391–92 & n.5 (8th Cir. 1978). Wilson maintained at oral argument that the

insufficiency of evidence to show an intent to conspire to murder requires a reversal of the convictions on both counts. Moreover, Wilson moved for a judgment of acquittal on both counts.

prints of both Wilson and Scott. At most this evidence indicates that Wilson helped Scott make up the mixture; again, it adds nothing to the Government's claim that Wilson knew that the mixture was to be poured on Tandy.

We are not persuaded that the evidence was sufficient to convince a fair minded jury beyond a reasonable doubt that Wilson knew that Scott intended to kill Tandy or that he knowingly acted in pursuit of the same object. Both of Wilson's convictions, therefore, rest on insufficient evidence.

III. *Conclusion.*

The judgment of conviction of Norman Karl Scott in case No. 80–1986 is affirmed; the judgment of conviction of Jerry Lee Wilson in case No. 80–1985 is reversed and the cause is remanded with direction to enter a judgment of acquittal.