UNITED STATES of America, Appellee,

v.

Jerry Lee WILSON, Appellant.

Norman Karl SCOTT, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 80–1985, 80–1986.

United States Court of Appeals,
Eighth Circuit.

Feb. 26, 1982.

Certiorari Denied May 24, 1982.
See 102 S.Ct. 2279.

Before HEANEY, BRIGHT and STEPHENSON, Circuit Judges.

### ORDER DENYING PETITION FOR REHEARING

Norman Karl Scott's conviction last came before this court for consideration in *United States v. Wilson, et al.,* 665 F.2d 825 (8th Cir. 1981). Both Jerry Lee Wilson and Norman Karl Scott had appealed their convictions for murder and conspiracy to murder Frederick James Tandy, a fellow inmate at the Medical Center for Federal Prisoners in Springfield, Missouri. While we find no reason to alter our prior rulings and, therefore, deny Scott's petition for rehearing, additional comment appears appropriate in light of the arguments made by Scott's counsel.

Each appellant originally alleged, *inter alia,* a violation of the prosecutor's duty to disclose evidence of favorable treatment under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Before reaching the merits of the appellants' claims this court remanded the *Brady* issue to the district court to permit the parties to select those documents they deemed relevant to our determination of that issue.

The district court, at the request of the parties, submitted to the clerk of this court a package of documents that we assumed contained all documents bearing on the allegation that undisclosed favorable treatment had been afforded the prosecution's inmate witnesses. After reviewing those documents, we found that appellants' claims that the inmate witnesses had received favorable treatment 'lacked merit. *United States v. Wilson, supra,* 665 F.2d at 827. Ultimately, however, we reversed Wilson's convictions for lack of sufficient evidence to establish his guilt beyond a reasonable

doubt. *Id.*, at 830. We affirmed Scott's conviction. *Id.*

It now appears that we reviewed only those documents the prosecution had asserted to be privileged on the basis of prison security and that additional documents, over which no privilege had been asserted, had not been presented to this court for review. This court has now reviewed these additional documents and we determine that our original decision must stand.

Scott insists that the Government violated his right under *Brady v. Maryland, supra,* because the undisclosed materials show that the Government gave favorable treatment to Robert Guess, Alvin Freeman,[1] and Michael Montgomery. Robert Guess' testimony proved crucial in convicting Scott because Guess positively identified Scott as the person who reached over the cell wall and poured a burning liquid onto Tandy. Neither Freeman nor Montgomery placed Scott at the scene of the murder, although each contributed information about Scott's motive, how he made the explosion mixture, and his conduct after the killing.

■ The records Scott contends the Government should have disclosed do not show any relationship between the favorable treatment the inmates allegedly received and the testimony each inmate gave. Many of these records involve incidents that occurred long before Tandy's death. One series of documents, however, does indicate that prison officials restored fifteen days of forfeited good time credit to Guess just after Guess' grand jury testimony. This restoration of credit made Guess eligible for transfer to a halfway house. In spite of the fortuitous timing of this incident, the record does not disclose that the Government

gave Guess this arguably favorable treatment in exchange for his testimony, and, in fact, the posttrial evidence strongly indicates otherwise. Guess' case manager asserted that the Government restored Guess' good time credits solely to benefit the prison by providing a safe placement for Guess apart from the defendants. Other evidence also belies Scott's contention that Guess' damaging testimony came in response to favorable treatment. Guess gave the same story to the FBI almost a month prior to his transfer. The evidence Scott uses to support his claims that the Government gave favorable treatment to Freeman and Montgomery contain similar problems.

In addition, we note that the Government's failure to provide these documents did not deter the defense from attacking the credibility of each witness. The jury was informed that each witness had a prior record and that each witness had denied knowledge of the murder when first questioned. Moreover, the defense cross-examined Freeman extensively about his agreement to plead guilty to the lesser charge of misprision of a felony in return for his testimony.

We have considered the importance of these witnesses to the Government's case, the extent to which they were impeached, and the significance of the new material to their credibility. *See United States v. Figurski,* 545 F.2d 389, 391–92 (4th Cir. 1976). Having done so, we are unable to say that "the suppressed evidence might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *see also Evans v. Janing,* 489 F.2d 470, 477 n.19 (8th Cir. 1973).

■ Accordingly, we deny the petition for rehearing.[2]

1. The Government originally indicted Freeman along with Wilson and Scott for murder and conspiracy to murder Tandy. The Government subsequently dismissed the indictment against Freeman in return for his testimony against Wilson and Scott, and a future guilty plea to the reduced charge of misprision of a felony. *See United States v. Wilson, supra,* 665 F.2d at 827–28. Both the defense and the jury knew of the arrangement.

2. Scott also contends that, having reversed Wilson's conspiracy conviction, we must now

reverse Scott's conspiracy conviction because, where there are only two coconspirators, acquittal of one requires reversal of the other's conviction. Notwithstanding some evidence to support the indictment of Freeman, *see* note 1 *supra,* we need not address Scott's argument. We have already upheld Scott's conviction for murder. *See United States v. Wilson, supra,* 665 F.2d at 827. Because Scott received concurrent life sentences, our review of his conspiracy conviction could not affect the duration of his confinement. *See United States v. Smith,* 601 F.2d 972, 974 (8th Cir.), *cert. denied,*

444 U.S. 879, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979). Further, because his convictions result from a conspiracy and a substantive offense charge, collateral consequences relating to parole eligibility are doubtful. *See id.* at 974‑75; 28 C.F.R. § 2.20 (1979). Other collateral consequences appear highly speculative. *See United States v. Darnell,* 545 F.2d 595, 599 (8th Cir. 1976) (disregarding "countless" hypothetical consequences), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1134, 51 L.Ed.2d 556 (1977). We therefore apply the concurrent sentence doctrine and decline to review the merits of Scott's challenge to his conviction for conspiracy to murder. *Accord United States v. Carlson,* 547 F.2d 1346, 1361 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977); *United States v. Darnell, supra,* 545 F.2d at 598‑99.