# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1547
_____

United States of America

*Plaintiff - Appellee*

v.

Timothy Justin Beaver, also known as Timmie

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: December 18, 2025
Filed: April 6, 2026
[Unpublished]

_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Timothy Justin Beaver pled guilty to conspiracy to participate in racketeering activity, in violation of 18 U.S.C. § 1962(d), and possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C). The district court[1]

_____

[1]The Honorable Stephen H. Locher, United States District Court for the Southern District of Iowa.

sentenced him to a 235-month term of imprisonment on the racketeering conspiracy count and a concurrent 60-month term on the drug possession count. Beaver raises two issues on appeal: (1) the district court erred in calculating his Sentencing Guidelines range when it found the applicable underlying offense was attempted murder; and (2) his sentence is substantively unreasonable. We affirm.

Beaver was a member of a Rock Island, Illinois, gang known as the Fifth Street gang. The Fifth Street gang had rival gangs located in Davenport, Iowa, known as the Twelfth Street gang and its offshoot the Savage Life Boys. Investigators determined that the Fifth Street gang gained respect and money through acts of violence—robberies and shootings—and drug trafficking. On May 31, 2020, Fifth Street gang members planned to burglarize Necker's Jewelers in Davenport, Iowa. While Beaver's fellow gang members were outside the store, they saw a man who they believed was a member of the Savage Life Boys gang. A firestorm of shooting broke out with the Fifth Street gang firing approximately 30 rounds before scattering. As the firefight was ongoing, a vehicle, which the district court determined was driven by Beaver, pulled up closer to the jewelry store, stopped to pick up two fleeing gang members, Mikey Cross and Marquis Tousant, and then sped away. Tousant was killed later that night when he and other gang members engaged in a shootout with police officers.

At sentencing, and over Beaver's objection, the district court found base offense level 33 was the offense level applicable to the underlying racketeering activity. See U.S.S.G. § 2E1.1(a)(2) (requiring application of base level 19 or the offense level applicable to the underlying racketeering activity, whichever is greater); U.S.S.G. § 2A2.1 (setting forth offense level for first-degree murder). Beaver asserts the district court erred because there was insufficient evidence to find he aided and abetted the shooting since the government did not establish that he was present at the scene, nor show that, prior to the shooting, he knowingly drove anyone to the jewelry store for any purpose other than burglary.

-2-

We review the district court's application of the sentencing guidelines *de novo* and its factual findings for clear error. United States v. Angel, 93 F.4th 1075, 1078 (8th Cir. 2024). We reverse for clear error "only when 'the entire record definitely and firmly illustrates that the lower court made a mistake.'" United States v. Sainz Navarrete, 955 F.3d 713, 720 (8th Cir. 2020) (quoting United States v. Marshall, 411 F.3d 891, 894 (8th Cir. 2005)).

At the sentencing hearing, the government presented text messages from one of the shooters, which were sent shortly after the incident, stating he was with "Timmy B." After the shooter was arrested and in custody, someone logged into the shooter's Facebook account and admitted that "after some sh*t happened, I got dropped off [at home]" before Tousant was killed. The person using the shooter's Facebook account later posted a request for Snapchat friends and listed an account name associated with Beaver. The writer of the Facebook messages—which the district court attributed to Beaver—described what happened and expressed regret about it. Beaver has not shown the district court clearly erred when it found Beaver was at the scene of the shooting and given the number of shots fired, any person there would have known a shooting occurred.

Likewise, sufficient evidence is in the record to support the district court's finding that Beaver was the getaway driver. While law enforcement officers were unable to identify the driver of the vehicle from surveillance video, the video captured Tousant and Cross running to the north side of Necker's Jewelers and, after shots were fired, a Chevrolet Traverse drove from where it had been parked to the north side, picked up Tousant and Cross, and fled the scene. According to the district court, the driver maneuvered the vehicle and sped away in a manner that one would do if aiding and abetting people involved in the shooting. The district court found the statements attributed to Beaver in the messages show that he was present earlier in the night, and the shooting at Necker's Jewelers took place earlier that night. The district court committed no error, clear or otherwise, in finding Beaver was present at the time of the shooting and acted as the getaway driver.

Beaver next contends that even if he was present at the scene, there was insufficient evidence to establish there would be a shooting. One of the known ways the Fifth Street gang sought to maintain respect was through shootings involving rival gang members. The district court found the shooting satisfied the elements of attempted first-degree murder, as it showed the victim was essentially ambushed. Despite no provocation by the victim, approximately 30 rounds were fired at him. The way Beaver drove away from the scene was, according to the district court, a "textbook example of aiding and abetting." See United States v. Nichols, 76 F.4th 1046, 1056 (8th Cir. 2023) (stating that "[s]erving as a 'getaway driver' to flee the scene of an offense is an affirmative act in furtherance of the offense"). The record supports the district court's findings that after Beaver heard the gunshots, he remained at the scene and affirmatively acted to help his fellow gang members. There is no indication that Beaver attempted to prevent or intervene when the gunfire erupted. The district court did not err when it applied the guidelines for first-degree murder. See id. at 1055 (quoting United States v. Wilson, 665 F.2d 825, 830 n.6 (8th Cir. 1981)) (noting an aider and abettor shares the same intent as a principal).

Lastly, Beaver contends the district court imposed a substantively unreasonable sentence because it failed to consider the seriousness and significance of his difficult childhood. The record shows the district court considered the circumstances of Beaver's childhood but concluded that any mitigation was outweighed by his criminal history and his continuing involvement with gang activities, noting Beaver was still involved with the same people a year after the shooting and he presented an ongoing danger to the community. The district court has wide latitude when weighing and assigning weight to certain sentencing factors. United States v. Crumble, 965 F.3d 642, 647 (8th Cir. 2020). We can find no abuse of the district court's discretion, and this is not the "unusual case" warranting reversal of the sentence as substantively unreasonable. See United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (noting it will be an unusual case for this Court to reverse a district court's sentence as substantively unreasonable).

We affirm the judgment of the district court.

_____